CONWAY, RESPONDENT, *v.* MONIDAH TRUST ET AL., APPELLANTS.

(No. 3,238.)

(Submitted March 21, 1913. Decided April 15, 1913.)

[132 Pac. 26.]

*Personal Injuries—Infants—Mining Claims—Unguarded Shafts —Liability of Owner—Statutes—Negligence Per Se.*

Personal Injuries—Mining Claims—Unguarded Shafts—Infants—Contributory Negligence—Complaint.
1.   Contributory negligence may not be inferred, as a matter of law, from the acts of a child seven years old; hence the rule that plaintiff in a personal injury action, who by his complaint shows that a proximate cause of his injury was an act of his own, is barred of recovery unless he also shows that he was exercising ordinary care and circumspection at the time of the accident, has no application where the injured party was an infant of the age above mentioned.

Same—Complaint—Sufficiency.
2.   Conceding that the rule of pleading referred to in paragraph 1, *supra,* is applicable in an action where plaintiff is a minor of the age of seven years, it was met by the allegations of plaintiff's age; that

at the time he fell into a shaft on defendant's mining claim, left unguarded (contrary to the provisions of section 8535, Revised Codes), it was dusk; that he was ignorant of the existence of the shaft, and engrossed in gathering wild flowers growing on the edge of said shaft; that he was using due care and prudence, and was without contributing fault and carelessness on his part in doing what he did.

Same—Real Property—Regulations—Police Power.

3.  The owner of real property holds it subject to such reasonable control and regulation by the state, under its police power, as the legislature deems necessary for the prevention of injury to the rights of others and the security of the public health and welfare.

Same—Unguarded Mining Shafts—Statutes—Noncompliance With—Negligence *Per Se.*

4.  Failure to observe the duty imposed by section 8535, Revised Codes, upon the person owning or in possession of property within the limits of a city or town or within one mile of such limits, on which there is a mining shaft, to place a cover over or a tight fence around the same, is negligence *per se.*

Same—Mining Claims—Trespass—Liability of Owner.

5.  Though a plaintiff infant was a technical trespasser upon defendant's mining claim, into an unguarded shaft on which he fell, the defendant's omission to comply with the requirement imposed upon him by section 8535, *supra,* rendered him liable to damages for injuries suffered by the plaintiff.

Same—Unguarded Mining Shafts—Statutes.

6.  The fact that defendant had not sunk the shaft into which plaintiff fell did not relieve him of liability, section 8535, *supra,* making it unlawful for the owner or possessor to permit "any such shaft * * * to remain open or unprotected for a period of more than ten days," without regard to when or by whom it was sunk.

Same—Location of Shaft—Evidence—Insufficiency.

7.  Evidence *held* insufficient to show that the shaft into which plaintiff fell was situated within a mile of the corporate limits of a city, a fact necessary to be shown to bring defendant within the purview of section 8535, Revised Codes.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Joseph F. Conway, Jr., a minor, by Joseph F. Conway, Sr., his guardian *ad litem,* against the Monidah Trust and others. Judgment for plaintiff. Defendants appeal from the judgment and an order denying their motion for a new trial. Reversed and remanded for new trial.

*Mr. James E. Murray,* for Appellants, submitted a brief as well as one in reply to that of Respondent, and argued the cause orally.

The plaintiff's right to recover damages depends solely on the question whether or not defendants have been guilty of action-

able negligence.   Actionable negligence is the breach of a legal
duty owing to the party injured.   The plaintiff must show that
defendants owed him a legal duty.   It is not sufficient to show
that the defendants owed a duty to the state, or some third party,
but the duty must be one which is owed directly to the party
complaining.   (Bishop on Noncontract Law, sec. 446; Kinkead
on. Torts, sec. 6, pp. 9, 10; *O'Leary* v. *Brooks Elevator Co.,* 7
N. D. 554, 41 L. R. A. 677, 75 N. W. 919; *Driscoll* v. *Clark,* 32
Mont. 172, 80 Pac. 1, 373; *Beinhorn* v. *Griswold,* 27 Mont. 79, 94
Am. St. Rep. 818, 59 L. R. A. 771, 69 Pac. 557; 1 Thompson on
Negligence, sec. 3; *Bottum's Admr. etc.* v. *Hawks,* 84 Vt. 370,
Ann. Cas. 1913A, 1025, 35 L. R. A. (n. s.) 440, 79 Atl. 858.)

The defendants' violation of the statute was not a violation of
any duty owing to the plaintiff.   It was a violation of a duty to
the public at large, and subjected defendants to the penalties
prescribed by the statute, but does not give rise to any other ad-
ditional liability unknown to the common law.   The courts have
been quite unanimous in holding that a statute enacted for the
benefit of the public at large does not create a civil liability un-
less expressly provided in the statute itself.   (*Holwerson* v. *St.
Louis etc. Ry. Co.,* 157 Mo. 216, 50 L. R. A. 850, 57 S. W. 770;
*Moran* v. *Pullman Car Co.,* 134 Mo. 641, 56 Am. St. Rep. 543, 33
L. R. A. 755, 36 S. W. 659; *Riddick* v. *Governor,* 1 Mo. 147;
*Toomey* v. *Southern Pac. Co.,* 86 Cal. 374, 10 L. R. A. 139, 24 Pac.
1074; *Heeney* v. *Sprague,* 11 R. I. 456, 23 Am. Rep. 502; *Zim-
merman* v. *Baur,* 11 Ind. App. 607, 39 N. E. 299; *Nottage* v.
*Sawmill Phoenix,* 133 Fed. 979; *Moore* v. *Gadsden,* 93 N. Y. 12;
*Beehler* v. *Daniels,* 19 R. I. 49, 31 Atl. 582.)

Many cases may be found announcing the general doctrine that
a mere violation of statute or ordinance is negligence *per se,* but
upon examination it will be found that in all such cases there
was a relation existing between the injured party and the vio-
lator of the statute, and the right of action existed independent
of the statute, the only effect of the statute being to change the
rules of evidence.   (*Condran* v. *Chicago R. Co.,* 67 Fed. 522,
14 C. C. A. 506, 28 L. R. A. 749; *Fleming* v. *St. Paul etc. R. Co.,*
27 Minn. 111, 6 N. W. 448; *Illinois Central Co.* v. *O'Connor,* 189

Ill. 559, 59 N. E. 1098; *Lonergan* v. *Illinois Cent. Co.*, 87 Iowa, 755, 17 L. R. A. 254, 49 N. W. 852, 53 N. W. 236; *Willy* v. *Mulledy*, 78 N. Y. 310, 34 Am. Rep. 536.)

"A construction giving a statute prospective operation is always to be preferred unless a purpose to give it a retrospective force is expressed by clear and positive command." (Endlich on Statutory Interpretation, secs. 271–273.) In the case at bar there is nothing to indicate that the legislature intended to give the Act in question any retroactive force; on the contrary, the statute is read as a whole, and so reading it and giving force and effect to all its language, it indicates as clearly as language can that the legislature intended to comprehend only shafts and cuts which might in the future be sunk or run. (See *Giles* v. *Giles*, 22 Minn. 348; *Levering* v. *Shockey*, 100 Ind. 558; *State* v. *Stein*, 13 Neb. 529, 14 N. W. 481; *State* v. *Bradford*, 36 Ga. 422; *Bullard* v. *Smith*, 28 Mont. 387, 72 Pac. 761.)

The term "any such shaft" used in the second clause of the statute refers to the shaft mentioned in the first clause, to-wit, a shaft sunk after the passage of the statute. Unless it is so construed the word "such" would have no meaning whatever, and the phrase "such shaft" should otherwise be read "any shaft," and thus the court would be reading out of the statute a word having a well-understood meaning and which was placed in the statute by the law-making body. Needless to add, courts have no such power, but must give effect to all words used, if possible. (*State* v. *Fisher*, 53 Or. 38, 98 Pac. 713; *Smith* v. *Minor*, 1 N. J. L. 16; *Walker* v. *Giddings*, 103 Mich. 344, 61 N. W. 512; *United States* v. *Taylor*, 28 Fed. Cas. No. 16,438, 1 Hughes, 514; *Moore* v. *Wildey Co.*, 176 Mass. 418, 57 N. E. 673; *Ogden* v. *Glidden*, 9 Wis. 46; *City of Philadelphia* v. *River Front R. Co.*, 133 Pa. 134, 19 Atl. 356; *State* v. *Govan*, 48 Ark. 76, 2 S. W. 347; *Warner Elevator etc. Co.* v. *Houston* (Tex. Civ. App.), 28 S. W. 405.)

Both the pleadings and the evidence shows that the plaintiff was guilty of contributory negligence. It was neither alleged nor proved that the plaintiff was so immature as to be incapable of contributory negligence. The mere fact that he was a minor was not sufficient to give rise to the presumption that he was in-

capable of exercising care and prudence to avoid injury. (*Gates* v. *Northern Pac. Ry. Co.*, 37 Mont. 103, 94 Pac. 751; *Pekin* v. *McMahon*, 154 Ill. 141, 45 Am. St. Rep. 114, 27 L. R. A. 206, 39 N. E. 484; *Stanwood* v. *Clancey*, 106 Me. 72, 75 Atl. 293; 29 Cyc. 539.)

*Messrs. Breen & Jones*, for Respondent, submitted a brief and one in answer to those of Appellants, and argued the cause orally.

It is true, as contended by appellants, that this court has often declared that a land owner owes no duty to a trespasser or a mere licensee who is upon his property, save to refrain from a willful or wanton act occasioning injury and to exercise reasonable care to avoid injury after becoming aware of the presence of such a person or persons, and that a trespasser or licensee in going upon the premises of another accepts and acquiesces in the condition thereof as found upon entering. This rule of law is predicated upon the doctrine that a man can do as he wills with that which he possesses. (*Driscoll* v. *Clark*, 32 Mont. 172, 80 Pac. 1, 373.) But this principle is not of unlimited and universal application—an exception is declared by statute: "The ownership of property is absolute when a single person has the absolute dominion over it and may use it or dispose of it according to his pleasure, subject only to general laws." (Sec. 4434, Revised Codes.) And the "general laws" referred to are the laws of this state. (*Parker* v. *Barnard*, 135 Mass. 116, 46 Am. Rep. 450.) And one of the general laws of this state to which the ownership of the Tzarena Lode was subject is section 8535, Revised Codes. A criminal statute, such as section 8535—a police regulation for the health and benefit of the citizens, including children, of communities within its protection—creates a positive duty, for the nonobservance of which, resulting proximately in injury to a person within its protection, the party failing to observe the same must respond in civil damages; its violation in this state is negligence *per se*, not evidence of negligence as the rule is declared in some states (*Neary* v. *Northern Pac. R. Co.*, 41 Mont. 480, 110 Pac. 226), and this, even though no analogous or other duty such as is required by the terms of

the criminal statute, existed at common law; and the fact that the party injured is a trespasser or mere licensee upon the property of the violator of the law is immaterial. (*Richardson* v. *El Paso etc. G. Min. Co.*, 51 Colo. 440, 118 Pac. 982.) In Colorado, aside from the duties created by statutes, such as the Act referred to in the *Richardson Case* (like the one under consideration in the instant case), the general rule of law is the same as that declared by our supreme court—that is, the rule as to the degree of care owing from the land owner to a trespasser or mere licensee who finds his way upon the former's premises. (See *Watson* v. *Manitou & Pike's Peak Ry. Co.*, 41 Colo. 138, 17 L. R. A. (n. s.) 916, 92 Pac. 17; *Fairplay Hyd. M. Co.* v. *Weston*, 29 Colo. 125, 67 Pac. 160, 21 Morr. Min. Rep. 725.) The principle declared in the *Richardson Case* is a well-nigh universal one. (1 Thompson on Negligence, sec. 951; *South & North Ala. R. Co.* v. *Donovan*, 84 Ala. 141, 4 South. 142; *Hayes* v. *Michigan Cent. R. Co.*, 111 U. S. 228, 4 Sup. Ct. Rep. 369, 28 L. Ed. 410; *Olson* v. *Gill Home Inv. Co. et al.*, 58 Wash. 151, 108 Pac. 140; *Isabel* v. *Hannibal & St. Jo R. R. Co.*, 60 Mo. 475; *Western & A. R. R.* v. *Meigs*, 74 Ga. 857.)

Appellants contend that the act of the infant respondent in falling into the open shaft shows that the proximate (or a proximate) cause of his injury was his own negligent act; that because thereof it was essential that he should have negatived this apparent neglect. A recent decision of the supreme court of North Carolina is an excellent example of the courts which have adopted the view that the law in respect to criminal liability should be used as a standard in negligence actions in scaling the acts of an injured minor to determine his capacity to entertain and subject himself to the imputation of neglect; in other words, the courts adopting this rule have held that children under the age of seven are incapable of the imputation of neglect, and children between the ages of seven and twelve or seven and fourteen are *prima facie* incapable of negligent act. (*Rolin* v. *R. J. Reynolds Tobacco Co.*, 141 N. C. 300, 8 Ann. Cas. 638, 7 L. R. A. (n. s.) 335, 53 S. E. 891.) And the Penal Code of this state lays down the same rule in respect to criminal understanding as is

referred to in the above case, save that the age limit is extended two more years, namely, fourteen. (Sec. 8116, Rev. Codes.) And the decisions sustaining the rule announced in the *Rolin Case* are numerous. (See *Doggett* v. *Chicago etc. R. Co.*, 134 Iowa, 690, 13 Ann. Cas. 588, 13 L. R. A. (n. s.) 364, 112 N. W. 171; *Birmingham R. Co.* v. *Mattison*, 166 Ala. 602, 52 South. 49; *Tucker* v. *Buffalo Cotton Mills Co.*, 75 S. C. 539, 121 Am. St. Rep. 957, 57 S. E. 626; *Lynchburg etc. M. Co.* v. *Stanley*, 102 Va. 590, 46 S. E. 908; *Norfolk etc. R. Co.* v. *Higgins*, 108 Va. 324, 61 S. E. 766; *Houston etc. R. Co.* v. *Adams*, 44 Tex. Civ. App. 288, 98 S. W. 222.) Therefore, inasmuch as it is alleged in the complaint that the infant respondent is of tender years and of but the age of seven, as he is either conclusively or at least *prima facie* incapable of neglect, it becomes obvious that it is unnecessary that a complaint should contain the allegations referred to by appellants, essential in a suit by an adult whose complaint renders the invocation of the rule necessary. (*Avey* v. *Galveston etc. Ry. Co.*, 81 Tex. 243, 26 Am. St. Rep. 809, 16 S. W. 1015; *Mayor etc.* v. *McLain* (Miss.), 6 South. 774; 1 Thompson on Negligence, secs. 213, 214, 217.)

MR. JUSTICE SANNER delivered the opinion of the court.

So far as germane to the questions involved in this appeal, the substantial allegations of the complaint are: That the defendant, a corporation, is the owner of the Tzarena lode mining claim, situate partly within and partly without the corporate limits of the city of Butte; that on July 19, 1911, there was, and for more than a year prior thereto had been, a certain shaft, about forty-five feet deep, on this property, which the defendant had negligently permitted to remain "open, exposed and unprotected, without a substantial cover, or any cover whatever being placed over the same, or without a tight fence, or any fence whatever, being placed around the same"; that said shaft "was approximately eight feet long and four feet wide from the bottom thereof to within about five feet of the natural surface of the ground adjacent thereto, at which point the sides of the said shaft spread outwardly until the same reached the natural surface, forming

a saucer or bowl-like depression,'' and around the edges of this depression, and for some distance on all sides thereof, there were wild flowers blooming; that near the Tzarena lode there were also odd and curious formations of rock which, with the flowers, formed an attraction for children; "that on the said 19th day of July, 1911, the plaintiff herein, a child of the age of seven years, who did not know of the existence of said shaft, at dusk of said day was plucking wild flowers near the mouth of said shaft, and while so doing observed a cluster of wild flowers some distance from him, which he started on a run to obtain, and while so doing and using due care and prudence, and without contributing fault and carelessness on his part, ran into the mouth of said shaft aforesaid, and was precipitated to the bottom thereof,'' sustaining the injuries for which recovery in this action is sought.

1. This complaint is attacked as insufficient because it alleges an affirmative act of the plaintiff, to-wit, that he ran into the mouth of the shaft, as a proximate cause of his injury, and does not contain sufficient allegations to negative contributory negligence. The general rule as settled in this state by the [1] uniform course of decision is that where the complaint shows that a proximate cause of plaintiff's injury was the act of the plaintiff himself, it will be held insufficient unless it goes further and by appropriate allegations shows that the plaintiff was, at the time, exercising ordinary care and circumspection. (*Kennon* v. *Gilmer*, 4 Mont. 433, 2 Pac. 21; *Nelson* v. *City of Helena*, 16 Mont. 21, 39 Pac. 905; *Hunter* v. *Montana C. Ry. Co.*, 22 Mont. 525, 534, 57 Pac. 140; *Cummings* v. *Helena & L. S. & R. Co.*, 26 Mont. 434, 68 Pac. 852; *Ball* v. *Gussenhoven*, 29 Mont. 321, 328, 74 Pac. 871; *Nord* v. *Boston & Mont. etc. Co.*, 30 Mont. 48, 75 Pac. 681; *Birsch* v. *Citizens' El. Co.*, 36 Mont. 574, 93 Pac. 940; *Poor* v. *Madison R. P. Co.*, 38 Mont. 341, 361, 99 Pac. 947; *Montague* v. *Hanson*, 38 Mont. 376, 99 Pac. 1063; *Badovinac* v. *Northern Pac. Ry. Co.*, 39 Mont. 454, 104 Pac. 543.) Of course this rule has reference only to acts of which negligence must be predicated in the absence of a countervailing explanation.

At what age a child becomes *sui juris*, so that negligence may be predicated of his acts, is a matter upon which authorities dif-

fer. By some it is held that a child of seven years of age is con-
clusively presumed incapable of contributory negligence. (*Wat-
son* v. *Southern Ry.*, 66 S. C. 47, 44 S. E. 375; *Taylor* v. *Delaware
& Hudson Ry.*, 113 Pa. 162, 176, 57 Am. Rep. 446, 8 Atl. 43;
*Chicago etc. Ry. Co.* v. *Welsh*, 118 Ill. 572, 9 N. E. 197; *Indi-
anapolis etc. Ry.* v. *Pitzer*, 109 Ind. 179, 194, 58 Am. Rep. 387,
6 N. E. 310, 10 N. E. 70.) However that may be, the rule in this
state is that contributory negligence is not to be inferred as a
matter of law, even in the case of a much older child. (*Mason*
v. *Northern Pac. Ry. Co.*, 45 Mont. 474, 124 Pac. 271.) This
being true, it follows that the rule invoked by appellant can
have no application to the complaint at bar. But apart from
this consideration, we think the averments of the age of the
[2] plaintiff; the fact that it was dusk; his ignorance of the
existence of the shaft; the natural engrossment in his childish
pursuit; and the general allegation that he was "using due care,
and prudence and without contributing fault and carelessness on
his part"—are, as a matter of pleading, sufficient to negative
contributory negligence and to avoid the rule. (*Birsch* v. *Citi-
zens' El. Co.*, *supra; Poor* v. *Madison R. P. Co.*, *supra; Evans-
ville & T. H. Ry.* v. *Crist*, 116 Ind. 446, 9 Am. St. Rep. 865,
2 L. R. A. 450, 19 N. E. 310; 1 Thompson on Negligence, secs.
375, 377, 378.)

2. Under the allegations of the complaint, the respondent was
technically a mere trespasser upon the property of the appellant.
(*Egan* v. *Montana C. Ry. Co.*, 24 Mont. 569, 63 Pac. 831; *Driscoll*
v. *Clark*, 32 Mont. 172, 80 Pac. 1, 373.) It is the undoubted rule
at common law that the owner of real property owes no duty to
trespassers, other than to refrain from intentional injury.
Hence no right of action would arise, in the absence of statute,
in favor of a trespasser who might suffer injury under the cir-
cumstances here pleaded (*Driscoll* v. *Clark*, *supra*); but every
owner holds his property subject to reasonable control and
[3] regulation of the mode of keeping and use as the legis-
lature, under the police power vested in the state, may think
necessary for the prevention of injury to the rights of others and

the security of the public health and welfare. (*Parker* v. *Barnard*, 135 Mass. 116, 46 Am. Rep. 450.)

The question, then, is whether or not a trespasser upon private property may recover damages for injury suffered by him while so trespassing, because of the property owner's failure to comply with section 8535, Revised Codes. This section is found in Title X of Part I of the Penal Code, under the heading, "Crimes Against the Public Health and Safety," and, so far as pertinent to this case, reads as follows: "Every person who sinks any shaft * * * or causes the same to be done, within the limits of any city or town or village in this state, or within one mile of the corporate limits of any city or town * * * and who shall fail to place a substantial cover over or tight fence around the same, is punishable by a fine not exceeding one thousand dollars. The owner of any property * * * shall be deemed to be within the provisions of this Act if he permit any such shaft * * * to remain open, exposed or unprotected upon his property * * * for a period of more than ten days. * * * " The contention is that this is a mere penal statute, providing its own express sanction, and, in the absence of appropriate language, gives rise to no civil responsibility whatever. In answer [4] to this we remark that there is by this statute imposed a duty positive and absolute, where none existed before; and it is the well-settled rule that failure to observe such a duty is negligence *per se.* (*Osterholm* v. *Boston & Mont. etc. Co.,* 40 Mont. 508, 107 Pac. 499; *Neary* v. *Northern Pac. Ry. Co.,* 41 Mont. 480, 110 Pac. 226; *Melville* v. *Butte-Balaklava C. Co.,* 47 Mont. 1, 130 Pac. 441, 9 L. R. A. (n. s.) 339, note.) In the *Melville Case,* decided at the last term of this court, we said: "It is the general rule that, where a statute makes a requirement, or prohibits a thing, for the benefit of a person or class of persons, one injured by reason of a violation of it is entitled to maintain an action against him by whose disobedience he has suffered injury; and this is true whether the statute is penal or not." To this declaration we still adhere as in accord with the express provisions of our Code. A failure to perform an act imposed by law as an absolute duty is an unlawful omission (section 5051, Rev.

Codes); and any person suffering detriment by reason of it may recover damages (section 6040, Rev. Codes).

But it is urged that this principle cannot apply in favor of one not within the purview of the statute by which the duty is imposed, and to this we assent; so that the remaining inquiry is: [5] Does the duty imposed by section 8535 apply for the benefit of persons who may by chance be technical trespassers upon mining property? This question, both directly and in its analogies, has been before many courts with apparent diversity of result; but no real difficulty is encountered in extracting a consistent rule out of the apparent conflict of decision, when it is observed that the various statutes involved are interpreted according to substantially this classification: (a) Those imposing duties to or for the benefit of the municipality or to the public considered as an entity. From such statutes no private right of action arises. (*Heeney* v. *Sprague,* 11 R. I. 456, 23 Am. Rep. 502; *Taylor* v. *L. S. & M. S. Ry.,* 45 Mich. 74, 40 Am. Rep. 457, 7 N. W. 728; *Frontier Laundry Co.* v. *Connolly,* 72 Neb. 767, 68 L. R. A. 425, 101 N. W. 995.)    (b) Those imposing duties to persons of a particular class. To have a right of action from such a statute one must clearly belong to the contemplated class. (*Osterholm* v. *Boston & Mont. etc. Co., supra; Toomey* v. *Southern Pac. R. R. Co.,* 86 Cal. 374, 10 L. R. A. 139, 24 Pac. 1074; *Flanagan* v. *Sanders,* 138 Mich. 253, 101 N. W. 581.)    (c) Those imposing duties to the public, considered as a composite of individuals, in which case a right of action does arise in one of the public when, and only when, he has sustained some special injury by reason of noncompliance. (*Hayes* v. *Michigan C. R. Co.,* 111 U. S. 228, 239, 240, 4 Sup. Ct. Rep. 369, 28 L. Ed. 410; *Philadelphia W. & B. Ry.* v. *Stebbing,* 62 Md. 504, 516, 517; *Sluder* v. *St. Louis Transit Co.,* 189 Mo. 107, 5 L. R. A. (n. s.) 186, 187, 88 S. W. 648; *Union Pac. Ry.* v. *McDonald,* 152 U. S. 262, 282, 14 Sup. Ct. Rep. 619, 38 L. Ed. 434.) It may be said, and perhaps correctly, that these are essentially restatements of the same thing, looked at from different angles (note, 9 L. R. A. (n. s.) 343); but that is unimportant. The important thing is that there are statutes such as we have mentioned under (c), and

these statutes usually bear the aspect of police regulations for the protection of the public relative to matters with which the public contact is commonly through individuals, and as to which the individuals are entitled to assume that the law has been observed. (*South & North Ala. R. Co.* v. *Donovan,* 84 Ala. 141, 4 South. 142; *Jackson* v. *Kansas C. etc. Ry.,* 157 Mo. 621, 80 Am. St. Rep. 650, 58 S. W. 32.) In a case relied on by the appellants (*Frontier Laundry Co.* v. *Connolly, supra*) the existence and meaning of such statutes is clearly recognized, as follows: "Wherever a statute or ordinance creates a duty or obligation, though it does not in express terms give a remedy, the remedy which is properly applicable to that obligation follows as an incident; but whether a liability arising from the breach of a duty prescribed by a statute or ordinance accrues for the benefit of an individual specially injured thereby, or whether such liability is exclusively of a public character, must depend upon the nature of the duty enjoined, and the benefits to be derived from its performance." The duty enjoined by section 8535 is such that noncompliance affects the public commonly through the person or property of the individual. The benefits to be derived from its performance inure to the public through the added safety assured to individual person and property, and can affect the public in no other way. That the failure to observe the requirements of such a statute will, if the proximate cause of injury, support an action even by a trespasser is sustained by an abundance of authority. (*Richardson* v. *El Paso, C. G. etc. Co.,* 51 Colo. 440, 118 Pac. 982; *Erb* v. *Morasch,* 8 Kan. App. 61, 54 Pac. 323; *Alabama & Va. R. Co.* v. *Carter,* 77 Miss. 511, 27 South. 993; *Chicago, B. & Q. R. Co.* v. *Grablin,* 38 Neb. 90, 56 N. W. 796, 57 N. W. 522; *Keyser* v. *Chicago & Grand Trunk Ry.,* 66 Mich. 390, 33 N. W. 867; *Meeks* v. *Southern Pac. R. R. Co.,* 56 Cal. 513, 38 Am. Rep. 67; *South & North Ala. Ry.* v. *Donovan, supra; Hayes* v. *M. C. R. Co., supra; Jackson* v. *Kansas C. etc. Ry. Co., supra.*)

In further elucidation of our views of this phase of the present case we quote the language of the supreme court of Colorado from the *Richardson Case, supra:* "An open, unprotected shaft

is a menace to life and limb. In the night-time or in a storm persons may fall into it, or children may thoughtlessly approach too near the edge and be precipitated to the bottom. Reasonable provisions, requiring an abandoned shaft to be so protected as to prevent such casualties, come clearly within the police powers of the commonwealth. * * * It is contended that plaintiffs, as well as the deceased, were mere licensees, which did not entitle either of them to the use of the dump in the immediate vicinity of the shaft, which was about 110 feet from the house; that deceased was therefore a trespasser when upon the dump and at the shaft, or, if the license extended to the immediate vicinity of the shaft, * * * the defendant violated none of its obligations growing out of the relationship of owner to licensee or trespasser. The proposition is wholly inapplicable. Plaintiffs' action is not based upon the ground of a failure on the part of defendant to fulfill any obligation which it owed them or the deceased because they occupied a house on the Australia claim, but upon the failure of the defendant to comply with a statutory requirement, the purpose of which was to protect the public from injury, which neglect, they claim, caused the death of their son. * * * To prevent injury to the public, including children, the General Assembly has required abandoned shafts to be covered. This, as we have said, is a valid police regulation, and the failure of the defendant to perform the duty imposed by statute renders it liable in this case if the death of the boy, in a substantial sense, was caused by its failure to comply with the statute.''

3. It is contended by appellants that this case is not within the provisions of section 8535 of the Penal Code, because it was [6] not shown that the Monidah Trust sank the shaft. The answer is found in the second portion of the section, viz.: ''The owner * * * shall be deemed to be within the provisions of this Act if he permit any such shaft * * * to remain open, exposed or unprotected upon his property * * * for a period of more than ten days.'' But it is urged that the words ''any such shaft'' restrict the application of the Act to shafts sunk after its passage. We cannot assent to this. As stated

above, the section is a police regulation, and its plain meaning is that no person shall be allowed to have an unprotected shaft, either inside a city, town, or village, or outside of, and within a mile of, the corporate limits of a city or town, and this without regard to when or by whom it may have been sunk. Those who, when the section was enacted found themselves in possession of unprotected shafts so situated were given ten days' time to cover or inclose them; those who since the section was enacted, as the result of city or town extension, find themselves similarly possessed are given a like time for the same purpose. The phrase "any such shaft" is descriptive of the nature and kind of shaft (*State* v. *Gemmell,* 45 Mont. 210, 122 Pac. 268), and means an unprotected shaft that is situated as mentioned in the first part of the section. No other construction is possible in view of the history of the statute and its obvious purpose (*Richardson* v. *El Paso Min. Co., supra*).

4. An issue was made in the pleadings as to whether the shaft in question was, at the time of the accident, within a mile of the corporate limits of Butte. One of the grounds of [7] appellants' motion for nonsuit was as follows: "Sixth. For the reason that the plaintiff has wholly failed to show that the defendants' mining claim, the Tzarena mining claim, or the shaft thereon rather, was within  *  *  *  a mile of the corporate limits of the city of Butte, and for the reason that the plaintiff has wholly failed to establish the corporate limits of the city of Butte." We think the motion should have been granted on this ground. The only testimony bearing upon the proximity of the shaft to the city limits is that of McMahon, and nowhere does he say what the fact was at the time of the accident. He testifies entirely as of the date of trial, except that in one unresponsive answer he speaks as of the date of his survey, which was after the accident. Moreover, while in his direct examination he says, "I know where the boundaries of the city is near what is known as the Tzarena lode claim, No. 1092, and know the city limits in that vicinity," on his cross-examination he nullifies this statement and the value of the map he had made by the following declaration: "I got my information as to the

corporate limits of the city of Butte from ordinance No. 642 on file in the office of the city clerk.'' Respondent asserts that it was not wrong, but praiseworthy, in the surveyor to secure the data for the running of his line from the city ordinance. That is not the point, and that is not what the witness said. Had there been proof by common reputation, as provided in subdivision 11 of section 7887, Revised Codes, or by other means not dependent upon ordinance 642, of the general location of the boundaries, there would then have been no harm in the fact that the surveyor, purposing to make a plat for use in evidence, consulted an ordinance to secure his detail data; but we are given to understand by the statement of McMahon that what he knew about the matter was derived from the ordinance, and he gives no other source. The ordinance itself was introduced in evidence, and it is to be noted that instead of aiding the testimony of McMahon as a source of absolute information, it shows upon its face that it did not, and could not without further proceedings, fix the boundaries as described. To meet this respondent bears strongly upon the statement of the witness that ordinance No. 642 ''went into effect'' and ''became operative'' during the Corby administration, some four or five years before the trial; but this was a mere incidental expression of opinion by a person not shown to be qualified, upon a subject not susceptible of opinion evidence. An attempt is made to show that appellants supplied this deficiency through their witness Hobart, also a civil engineer, who said: ''I examined the mining claim known as the Tzarena mining claim situated in the southwest of the city, and also examined the shaft over there which now has a fence around it.'' This statement, besides being ambiguous and apropos to a mere general location, does not pretend to advise us concerning the proximity of the shaft to the corporate limits of Butte, and it will not support the inference sought to be drawn from it.

5. Since this case must be reversed, it is unnecessary to enlarge upon the other assignments of alleged error. Suffice it to say that we see no fault in the other rulings complained of, as they are presented by this record.

The discussion contained in the first part of this opinion settles adversely to appellants the contention that the evidence establishes contributory negligence as a matter of law. We are not prepared to say that, even if plaintiff had been an adult, the evidence would have shown contributory negligence so as to take the case from the jury; and certainly it did not do so as to this infant plaintiff. So, too, we think the evidence was sufficient to establish the damages with as much certainty as is requisite in this class of cases. As to whether it justified the amount awarded by the jury, we express no opinion.

Because of respondent's failure to submit sufficient proof that the shaft into which he fell was, at the time of the accident, within one mile of the corporate limits of the city of Butte as alleged, the judgment and order appealed from are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. CHIEF JUSTICE BRANTLY and Mr. JUSTICE HOLLOWAY concur.

Rehearing denied May 17, 1913.