Osso, Appellee, v. Hamilton City Lines, Inc., Appellant.

(No. 959—Decided June 22, 1949.)

Mr. Mark T. Brown, for appellee.
Messrs. Baden & Fiehrer, for appellant.

By the Court. This is an appeal on questions of law from a jury's verdict and a judgment for plaintiff who sustained personal injuries when he swerved the vehicle he was driving from its path at a street intersection which crossed at right angles the path of a bus of defendant approaching the intersection from another direction.

Corwin and Van Hook avenues are public streets of equal station in the city of Hamilton, intersecting at right angles, so that vehicles approaching that intersection from different directions are governed solely by the right-of-way statute and the requirements of reasonable care.

Plaintiff, approaching the intersection from the west in traveling east on Corwin avenue, had the right of way to proceed uninterruptedly in his path, provided he was proceeding in a lawful manner. Defendant's bus, approaching the intersection from the north in proceeding south on Van Hook avenue, was required to yield the right of way to traffic approaching, as

plaintiff was, from the defendant's right. In yielding the right of way, defendant's bus had the leeway of invading the north half of Corwin avenue as far south as the center line thereof, marking the north boundary of plaintiff's path and right of way. *Morris* v. *Bloomgren*, 127 Ohio St., 147, 154, 187 N. E., 2, 89 A. L. R., 831; *Coshun* v. *Mauseau*, 62 Ohio App., 249, 23 N. E. (2d), 656; *Schaefer* v. *Cincinnati Street Ry. Co.*, 75 Ohio App., 288, 62 N. E. (2d), 102.

Plaintiff testified:

"Q. * * * I will ask you whether or not you saw a bus owned and operated by the Hamilton City Lines, Inc.? A. Yes sir.

"Q. Where was that bus when you first saw it? A. Oh, I was 50 feet and he was still further back than I was.

"Q. Now as you reached the intersection of Van Hook and entered the intersection, I will ask you whether or not the bus stopped at the intersection of Van Hook and Corwin avenue? A. No, he kept coming.

"Q. Now then you say he kept coming—what do you mean? A. He kept coming towards me and I thought he would stop, being as how I had the right of way, I thought he would stop.

"Q. Did you come on into the intersection? A. Yes.

"Q. And did the bus continue on into the intersection? A. Yes, right on in.

"Q. Now how close did the bus come to the truck in which you were riding?

"Q. How close in feet did he come to you? A. I would say five—between five and ten feet.

"Q. What did you do when you observed the bus coming on through the intersection and approaching you from the left? A. I swerved—turned my wheels sharp in order to get out of the way of him.

"Q. Which way did you swerve? A. To my right.

"Q. Would that be down Van Hook avenue? A. Down Van Hook avenue."

The testimony shows that while the bus did enter the intersection, it stopped before crossing the center line and actually did not invade the path of plaintiff's vehicle. The testimony varies in estimating the distance north of the center line when the bus was finally halted between extremes of ten to two feet. The bus driver testified that he looked to his right down Corwin avenue when 62 feet north of the intersection and did not see the plaintiff's vehicle, and on cross-examination testified:

"Q. When you entered the intersection had you seen the Osso truck? A. Yes sir.

"Q. Where did you see the Osso truck when you entered the intersection? A. In front of me.

"Q. How close to the front end of your bus was it when you first saw it? A. I would say approximately six or eight feet.

"Q. In other words, John, up to that time you hadn't taken the time to look to the right to see whether or not there was any oncoming traffic from your right? A. Just the other time that I looked.

"Q. And that was the first time you saw the Osso truck—when it was six or eight feet in front of you? A. Yes sir."

Defendant maintains it is entitled to final judgment on its motions made at the close of plaintiff's case, renewed at the close of all the evidence, and *non obstante veredicto*, because having a leeway of proceeding up to the center line or actual path of plaintiff's vehicle, and having stopped its bus within that leeway, it, in fact, did yield the right of way, and, therefore, there is no proof of negligence on the part of defendant.

Defendant does not, however, argue that actual collision is necessary to fix liability.

Undoubtedly, the evidence was such as to require its submission to the jury to determine the two issues of negligence and contributory negligence. If the jury believed some evidence, it could have very well concluded that while the defendant had not invaded the plaintiff's right of way, it had approached so close to it and in such a manner as to lead a reasonable man to conclude that it intended to continue into the plaintiff's right of way and, as a result, to collide with the truck which the plaintiff was operating, thereby creating a sudden emergency, requiring an instantaneous decision by plaintiff as to what he should do to avoid injury. A charge on the subject of the duty of a person in the presence of a sudden and unanticipated emergency was, therefore, required by the evidence.

A liberal construction of the plaintiff's petition would bring this evidence within its allegations. The difficulty is that the court, on defendant's motion, struck from the petition all the allegations susceptible of such construction.

The amended petition (styled "supplemental petition") contains no allegation even suggesting a sudden emergency. The only allegations of negligence are excessive speed, failure to keep a proper lookout and failure to yield the right of way. The legal conclusion is then alleged that by reason of this negligence the plaintiff was injured, but there is no allegation of facts indicating in what way this negligence caused the injuries. In the part of the petition which was omitted by order of the court, it was alleged that the defendant had driven its truck into and through the intersection in such a manner "as to cause or force the plaintiff to turn or swerve the delivery truck to avoid having the bus collide with the left center or

rear of said delivery truck, and as a result of which plaintiff suffered injuries." This allegation would have been sufficient perhaps to permit the introduction of the evidence showing that plaintiff acted upon a sudden emergency and if that sudden emergency was caused by the negligence of the defendant and the plaintiff acted as a reasonably prudent person under such circumstances, and notwithstanding was injured as a direct result of defendant's negligence, the plaintiff would be entitled to recover.

It seems to us that the unusual cause of action presented by the evidence, required the plaintiff to set forth facts showing that defendant's negligence was the direct cause of his injuries and also an allegation expressly negativing contributory negligence.

In 38 American Jurisprudence, 955 and 956, Section 264, it is said:

"One although guilty of a negligent act is civilly liable only for an injury or injuries proximately caused by that negligent act, and it is essential to the statement of a good cause of action in negligence that the plaintiff's pleading show that the defendant's negligence as set forth was the proximate cause of the injury of which the plaintiff complains. He must show a causal connection between the supposed negligent act of the defendant and the injury which it is alleged resulted therefrom; unless he does so, his pleading is open to demurrer for the want of a statement of a cause of action. It is not sufficient to charge negligence in the abstract. The breach of duty relied upon must have been the proximate cause of the injury, and the facts pleaded must disclose the causal connection between the defendant's negligent act and the injury complained of."

And at page 956 it is said also:

"A complaint which shows that a proximate cause

of the plaintiff's injury was his own act will be held insufficient unless it goes further and by appropriate allegations shows that he was at the time exercising ordinary care and circumspection.''

See, also, *Conway* v. *Monidah Trust*, 47 Mont., 269, 132 P., 26, L. R. A. 1915E, 500, 506.

This is the law of Ohio. In *Myers, Admr.*, v. *Norfolk & Western Ry. Co.*, 122 Ohio St., 557, 172 N. E., 666, it is said at page 558:

''If the plaintiff's own testimony supporting his cause of action raises a presumption of contributory negligence, the burden rests upon him to remove that presumption. *Baltimore & Ohio Rd. Co.* v. *Whitacre*, 35 Ohio St., 627; *Maddex* v. *Columber*, 114 Ohio St., 178, 151 N. E., 56. However, this rule has been somewhat modified in this respect: That if the plaintiff's proof raises a presumption of negligence upon his part, he is only required to produce evidence sufficient to counterbalance the evidence giving rise to the presumption. *Tresise* v. *Ashdown, Admr.*, 118 Ohio St., 307, 160 N. E., 898, 58 A. L. R., 1476. The same rule applies to pleading: If the allegations of his pleading suggest a reasonable inference that the plaintiff himself was negligent or at fault, it then becomes necessary for him in his pleading to negative such inference; otherwise not. *Street Rd. Co.* v. *Nolthenius*, 40 Ohio St., 376.''

The syllabus to *Street Rd. Co.* v. *Nolthenius*, 40 Ohio St., 376, is as follows:

''1. In an action for an injury alleged to have been caused by the negligence of the defendant, it is not necessary to allege in the petition that the injury was caused without the fault or negligence of the plaintiff, unless the other averments necessary to state a cause of action suggest the inference that the plaintiff may have been guilty of contributory negligence.

"2. Where an action was brought for an injury received by falling into a trench which had been dug in a public street for the purpose of laying or repairing the track of a street railroad, the opinion of a witness for the plaintiff that the condition of the trench and track was dangerous, was not competent. But after the defendant, on cross-examination, had called out the opinion of the witness, that the condition, as he claimed it to be, of the trench and track was not dangerous, it was not error to permit the witness on re-examination to state his opinion that the condition, as claimed by the plaintiff, of the trench and track was dangerous."

We conclude that the issues made by the evidence were never clearly joined in the pleadings and, as a result, those issues were not contested in the way they would have been had the pleadings presented them. It is manifest that a "collision case" requires different evidence to prove, and the application of different rules of law to decide than a case where the plaintiff's own act causes his injury in a sudden emergency brought into existence by the defendant's negligence.

At the trial the evidence disclosed that no collision had taken place between the two motor vehicles, but that the plaintiff's injuries resulted from the truck he was operating coming in collision with a tree on the side of the street. Now to bring the operator of the defendant's bus into direct causal relation to this collision it was necessary to show that the plaintiff in swerving his truck acted in a sudden emergency to avoid the imminent peril of being injured in a collision of the two trucks. However, the purpose, intent, or motive of the plaintiff in turning, is left to inference from the circumstances. The plaintiff did not testify as to his mental reactions and this was probably due to the fact that early in his direct examination

the court sustained a motion to strike out his statement that "if he didn't swerve, he would have run right into me." We think it clear that direct testimony of the plaintiff's mental reactions was competent on the issue raised by the evidence. In 20 American Jurisprudence, 314 and 315, Section 338, it is stated:

"The circumstances attending the act of a party are not the only competent evidence of the condition or state of his mind in doing it. It is now well settled that whenever the motive, belief, or intention of any person is a material fact to be proved under the issues of the case, it is competent to prove it by the direct testimony of such person, regardless of whether or not he is a party to the suit. In other words, when a person's motive is in issue, he may give his version of the matter, although under the earlier common law, where parties were incompetent as witnesses, the intent of a party could be proved only by circumstantial evidence. The admissibility of direct testimony as to intention depends, however, upon the materiality of the actual intention."

Notwithstanding the limitation of the evidence on whether plaintiff had acted as a result of a sudden emergency to circumstantial evidence, the court, at plaintiff's request, gave a special charge on that subject, and the giving of this special charge is one of the assignments of error. It is claimed that this charge is erroneous, because it is long, involved, and repetitious, covers a principle not raised by the pleadings or evidence, assumes that plaintiff was placed in a position of peril, without his fault, and that the defendant was negligent.

This special charge only incidentally stated the law of sudden emergency in defining what was and what was not contributory negligence. It did not state the issue of sudden emergency or all the law necessary to

guide the jury in deciding such an issue. Nor did the court in its general charge state that issue or the law relating to it. The court did—at the close of the general charge, at the plaintiff's request—charge that it was not necessary for the plaintiff to prove an actual impact of the motor vehicles in order to recover—and that was all.

Without analyzing the special charge, we think a reading of it is sufficient to disclose the vice of longevity and repetitiousness. At least one member of the court is of the opinion that it is also to be condemned for assuming that the defendant had been negligent.

Our conclusion is that the giving of the special charge constituted error. Whether it would be so prejudicial as to require a reversal in a case that had otherwise been tried free from error, it is not necessary to decide. In this case in which the issues were not clearly pleaded or presented to the jury, we are of the opinion that the error justifies a reversal of the judgment and a remand of the cause for further proceedings.

*Judgment reversed.*

Ross, P. J., Hildebrant and Matthews, JJ., concur.