FLANAGAN *v.* SANDERS.

1. NEGLIGENCE—ELEVATOR SHAFTS—PROTECTION—DUTY TO TRESPASSERS.
    The owner of a store building owes no common-law duty to a trespasser to maintain guards about an elevator shaft on his premises.

2. SAME—DETROIT CHARTER—CONSTRUCTION.
    Section 714 of the charter of Detroit of 1893, requiring that elevator shafts in stores or buildings in the city shall be provided with and protected by a substantial railing and sufficient automatic trapdoors, etc., does not impose a duty on the owners of store buildings in favor of trespassers, nor render them liable to trespassers for injuries proximately resulting from failure to provide elevator wells with automatic gates.

Error to Wayne; Rohnert, J.   Submitted October 5, 1904.   (Docket No. 10.)   Decided November 29, 1904.

Case by Mollie A Flanagan against Fred Sanders and others for personal injuries.   There was judgment for defendants, and plaintiff brings error.   Affirmed.

*Corliss, Andrus, Leete & Joslyn* (*Ray B. Morgan*, of counsel), for appellant.

*Brennan, Donnelly & Van De Mark*, for appellees.

MONTGOMERY, J. The plaintiff, a young woman 27 years of age, was a saleswoman in charge of the toilet goods department of Shafer's store in Detroit at the time this cause of action arose, and had held such position for upwards of four years.

Shafer's store occupied the first eight floors of the Majestic building, a building fourteen stories high, situated on the corner of Woodward and Michigan avenues, directly opposite the city hall, the busiest locality in the city.

Defendants occupied the six-story building adjoining the Majestic building on the north, and known as 141 and 143 Woodward avenue. They were the lessees of the whole building, and occupied the basement, ground floor, and fourth floor themselves in their confectionery and ice cream business. The remainder of the building was rented by them to numerous tenants for office purposes. In the rear of this building defendant maintained a frieght elevator running from the basement to the top of the building. On the ground floor the elevator could be reached only by a door opening on the alley. This door led to an inclosure about 18 feet long and 8 feet wide. This inclosure was provided with no other doors or windows. At its inner end, and about 8 feet from the door, was the elevator opening, extending practically the full width of the inclosure. This opening or well-hole was provided with a picket gate, which extended across the inclosure in front of the hole. The gate was not automatic, but was operated by hand, sliding up and down in grooves. If a person, in using the elevator, pushed the gate up above his head, and then took the elevator to some other floor, and forgot to push the gate down, it would remain up, and the opening in the floor would be left with no guard or protection whatever. It was not provided with trapdoors.

On the morning in question—Monday, October 7, 1901—plaintiff arrived at the Michigan-avenue entrance to the, Shafer store, at about 8 :15 o'clock, and found it surrounded by a large crowd. The business had a few days before been sold to Pardridge & Walsh, and for three days previous the store had been closed in preparation for a sale, which had been widely advertised. The plaintiff, with other employés, had worked until 12 o'clock Sunday night in arranging her stock. Upon reaching the Michigan-avenue entrance, plaintiff was instructed by the night watchman to go around to the alley entrance. This she did, in company with Mrs. Dorothy Gray, another saleswoman, entering the alley from Griswold street. Neither had ever before been in the alley. The alley is L-shaped, running south from State street in the rear of the Woodward-avenue stores to the Majestic building, then running west and opening on Griswold street in the rear of the Michigan-avenue stores.

The plaintiff and Mrs. Gray proceeded along the alley towards the Majestic building. They entered a door which they thought was the rear door of the Majestic building. It proved to be the door leading to the Sanders' elevator inclosure. Plaintiff, who entered the door ahead of Mrs. Gray, stepped into the open well hole and fell a distance of 11 feet to the brick floor of the basement, whereby she received very serious injuries.

Section 714 of the charter and laws of the city of Detroit (1893), upon which the plaintiff relies, reads in part as follows:

"In any store or building in the city of Detroit in which there shall exist or be placed any hoist-way, elevator, or well-hole, the openings thereof through and upon each floor of said building, shall be provided with and protected by a substantial railing, and also with good and sufficient trap-doors opening and closing automatically as the elevator passes from floor to floor: *Provided*, however, that such hoist-way, elevator, or well-hole may be inclosed in brick or by substantial woodwork, furred, lathed, and plastered or sheathed with corrugated iron."

The following diagram shows the situation of the premises and the location of the elevator shaft:

This action was planted and prosecuted on the theory that this statute imposed upon the defendants a positive duty, and that the neglect of this duty gave rise to a cause of action in favor of one occupying the relation to the property which this plaintiff did. The court submitted the case to the jury upon this theory. A verdict was returned for defendant. Plaintiff brings error, and alleges that the court erred in various instructions given and in

refusing certain requests preferred by the plaintiff's counsel.

At the threshold of the case lies the question whether the plaintiff is in position to complain of the defendant's failure to observe the requirements of this statute if there was such omission, for, if she is not entitled to assert that this statute imposed a duty upon defendant for her benefit, the other questions involved become immaterial.

It is clear that at the common law the defendant owed the plaintiff no duty to maintain guards about the elevator shaft for her protection. She was not upon defendant's premises by invitation or license. A closed door stood between the alley and the elevator shaft. This entry way was not designed for use by the general public, but was used only by those who were concerned in using the elevator for handling freight. Our own cases upon this question are decisive. *Pelton* v. *Schmidt*, 97 Mich. 231; *Ryan* v. *Towar*, 128 Mich. 463.

Is the rule different where a duty is imposed by statute? There are cases in which a statute imposed added duties in the care of one's premises, in which it is held that the duties are public in their nature, and that a neglect of duty can only be redressed by the public. Such a statute was considered in *Taylor* v. *Railroad Co.*, 45 Mich. 74. There are statutes imposing duties the neglect of which may be considered as evidence of negligence in an action brought by one sustaining a relation to the offending party which entitles him to invoke such statute, as in *McRickard* v. *Flint*, 114 N. Y. 222; *Parker* v. *Barnard*, 135 Mass. 116. It does not follow, however, that the legislative intent was to impose a duty upon owners of buildings as to trespassers. It is hardly conceivable that any such purpose to reverse all the rules relating to the duty owed by the owner of a private building was in the legislative intent. It was certainly not expressed.

We think that the most that can be said of this legislation is that in the interest of those to whom the owners of buildings owe care the measure of that duty is fixed.

188 MICH.—17.

But we think it was not intended to create new relations, nor to impose upon such owner duties to strangers, trespassers, or others in no way entitled to occupy or be present on the premises. In this view no other verdict than that reached on the trial would be justified.

The judgment is affirmed.

MOORE, C. J., and CARPENTER and HOOKER, JJ., concurred. GRANT, J., did not sit.