GARDNER v WOOD

KILISZEWSKI v KNIGHTS OF COLUMBUS

Docket Nos. 77770, 78228. Argued January 15, 1987 (Calendar Nos. 15-16). Decided October 30, 1987.

Doris Gardner, as personal representative of the estate of Freddie T. Mongeau, deceased, and six other persons who are the decedent's next of kin, brought a wrongful death action in the Oakland Circuit Court against Willis D. Wood, Jr., the driver of an automobile involved in the decedent's fatal accident, and the Oak Management Company, doing business as E. A. Fuller Oaks Corporation, the management agent for a banquet hall facility. The plaintiffs alleged that Fuller Oaks violated the bottle club act by serving intoxicating beverages to Wood while he was visibly intoxicated at its facility which was leased for a wedding reception, proximately causing the decedent's death. The court, David F. Breck, J., denied defendant's motion for summary judgment, finding that a violation of the bottle club act could give rise to a valid cause of action. The Court of Appeals, T. M. BURNS, P.J., and BEASLEY and PAJTAS, JJ., affirmed in an opinion per curiam (Docket No. 83985). The defendant appeals.

Anthony K. Kiliszewski and others brought an action in the Kent Circuit Court against the Knights of Columbus, the St. Vincent de Paul Building Corporation, and others, seeking damages for injuries suffered by the plaintiffs in an automobile accident involving a minor driver who became intoxicated at a hall owned by St. Vincent which had been rented to another defendant for a private party. The plaintiffs alleged that the defendant violated the bottle club act by leasing its premises to the other defendant who allowed the drinking of alcohol for a consideration. The court, Woodrow A. Yared, J., granted summary judgment for the defendants, finding that the mere leasing of the hall did not constitute a lease of the premises for

REFERENCES

Am Jur 2d, Intoxicating Liquors §§ 114 et seq., 253 et seq.

Criminal liability of member or agent of private club or association, or of owner or lessor of its premises, for violation of state or local liquor or gambling laws thereon. 98 ALR3d 694.

the service of alcohol. The Court of Appeals, SHEPHERD, P.J., and R. M. MAHER and PETERSON, JJ., affirmed in an unpublished opinion per curiam (Docket No. 76613). The plaintiffs appeal.

In a unanimous opinion by Justice BOYLE, the Supreme Court *held:*

A civil cause of action against an owner of a hall not licensed to serve alcohol for injuries sustained as a result of the intoxication of a person who is served alcohol on the premises by a lessee may not be based on a violation of the bottle club act because the type of hazard created by an intoxicated person is not a hazard which the act was intended to eliminate. The act proscribes the consumption of alcohol at certain locations, but does not impose a duty upon a premises owner to control the amount of alcohol consumed on the premises so as to avoid creating an unreasonable risk of harm to persons off the premises. In these cases, the plaintiffs failed to state a claim of negligence for which the relief sought may be granted.

1. A bottle club is typically described as a place where no intoxicating liquors are sold, but in which a person who is a member may keep liquor for consumption on the premises, and in which mixes and "setups" are provided by the club. Under the plain meaning of the act, unlicensed commercial halls or facilities may allow persons on their premises to consume alcohol which the persons have provided for themselves as long as the hall or facility does not require any "consideration" and as long as the hall or facility sells no food. Unlicensed nonprofit halls or facilities also may permit persons on their premises to furnish and consume their own alcohol provided that no additional consideration as defined in the act is exchanged for the privilege. Under the act, it is not the amount of alcohol consumed that is controlled, but its source and where it is consumed.

2. The Liquor Control Act is a comprehensive legislative scheme creating new and particular remedies against persons not liable at common law and vesting exclusive control of the licensing, taxation, sale, or distribution of alcoholic liquors within the state for the benefit of the public. The bottle club act is part of the scheme, its strictures being directed toward nonlicensed premises owners who may profit from the activity of alcohol consumption without obtaining a license. Whether the bottle club act was violated need not be addressed in these cases because the hazard presented by the furnishing of alcohol to an intoxicated person is not a hazard which the act was intended to eliminate. Compliance with the act might not have

prevented the harm the plaintiffs suffered. The act provides that owners of unlicensed commercial or nonprofit halls may allow consumption of alcohol on their premises as long as no consideration is exchanged for the privilege. It does not preclude the drinking of alcohol on unlicensed premises. Thus, the potential for the type of harm the plaintiffs suffered would exist even if there is compliance. The statute as a whole falls within the category of regulations intended only for the protection of the public at large by creating an obligation in premises owners to the state. No civil cause of action existed at common law for recovery of damages due to the unlawful serving of intoxicating beverages, and, unlike the remedy which the Legislature created in the dramshop act for such unlawful serving, no similar remedy for violations of the bottle club act was created. While owners of unlicensed halls are subject to criminal penalties for allowing persons, for a consideration, to consume their own alcohol on the premises, they are not subject to civil liability. A civil remedy for the harm incurred in these cases neither was intended by the Legislature nor is consistent with the legislative scheme of the bottle club act.

*Gardner,* reversed.

*Kiliszewski,* affirmed.

150 Mich App 194; 388 NW2d 276 (1986) reversed.

1. INTOXICATING LIQUORS — BOTTLE CLUB ACT — CONSUMPTION OF ALCOHOL — PREMISES OWNERS — CIVIL LIABILITY.

A civil cause of action against an owner of a hall not licensed to serve alcohol for injuries sustained as a result of the intoxication of a person who is served alcohol on the premises by a lessee may not be based on a violation of the bottle club act because the type of hazard created by an intoxicated person is not a hazard which the act was intended to eliminate; the act proscribes the consumption of alcohol at certain locations and under certain statutorily defined circumstances, but does not impose a duty upon a premises owner to control the amount of alcohol consumed on the premises so as to avoid creating an unreasonable risk of harm to persons off the premises (MCL 436.26c; MSA 18.997[3]).

2. INTOXICATING LIQUORS — BOTTLE CLUB ACT — CONSUMPTION OF ALCOHOL — ADDITIONAL CONSIDERATION.

Unlicensed commercial halls or facilities may allow persons on their premises to consume alcohol which the persons have provided for themselves as long as the hall or facility does not require any consideration and as long as the hall or facility sells no food; unlicensed, nonprofit halls or facilities also may

permit persons on their premises to furnish and consume their own alcohol provided that no additional consideration as defined in the act is exchanged for the privilege (MCL 436.26c; MSA 18.997[3]).

*James C. Thomas, P.C.* (by *James C. Thomas* and *Daniel P. O'Neil*), for the plaintiffs in *Gardner.*

*Bremer, Wade, Nelson & Alt* (by *Robert N. Alt, Jr.,* and *Phillip J. Nelson*) for the plaintiffs in *Kiliszewski.*

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C.* (by *Michael J. Walter*), for defendant E. A. Fuller Oaks Corporation in *Wood.*

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Robert L. DeJong* and *Mark R. Smith*) for the defendants in *Kiliszewski.*

BOYLE, J. The issue presented in these cases is whether a violation of the penal provisions of MCL 436.26c; MSA 18.997(3), prohibiting the consumption of alcohol on unlicensed premises for a consideration and prohibiting the consumption of alcohol on the premises of unlicensed commercial establishments selling food gives rise to a civil cause of action against the premises owner for injuries sustained due to the alleged intoxication of a person served on the premises. We hold that a civil cause of action may not be based on the violation of these sections of the Liquor Control Act because the type of hazard created by an intoxicated person is not a hazard which these provisions intended to eliminate. These provisions proscribe the consumption of alcohol at certain locations. Section 26c does not impose a duty to control the amount of alcohol consumed on the premises so as to avoid creating an unreasonable risk of harm to those off the premises. Therefore,

the plaintiffs in each case have failed to state a claim of negligence for which the relief sought may be granted.

## I. FACTS

### A. *KILISZEWSKI v KNIGHTS OF COLUMBUS*

Plaintiffs brought this negligence action to recover for injuries suffered when the car in which they were passengers was struck by a car driven by defendant Tomasunas.

Defendant, St. Vincent de Paul Building Corporation, owns the premises occupied by the Knights of Columbus in Conklin, Michigan. For purposes of this opinion, all references to St. Vincent include the Knights of Columbus as well. St. Vincent is not a licensee of any kind under the Michigan Liquor Control Act, MCL 436.1a *et seq.;* MSA 18.991(1) *et seq.* St. Vincent makes these premises available to the public for a rental fee.

On or about April 19, 1981, St. Vincent leased its premises to William and Paul Schullo[1] to use for a bunny hop. Tickets sold for the event entitled the bearer to drink beer provided by Schullo. St. Vincent neither provided, procured, nor distributed beer or other alcoholic beverages at the event. Moreover, the Schullos' lease prohibited the furnishing of alcohol to minors.

Thomas Tomasunas, a minor at the time, attended the event and became intoxicated. After leaving the event, and while driving in an allegedly intoxicated condition, Tomasunas disregarded a stop sign and struck the motor vehicle in which the plaintiffs were passengers.

[1] William and Paul Schullo are also named defendants in this action. At the time of this writing, the claims against them remain pending in the trial court.

This appeal concerns plaintiffs' claim that St. Vincent violated the bottle club act, MCL 436.26c; MSA 18.997(3), by furnishing the premises to the Schullos who allowed others to engage in the drinking of alcohol for a consideration, and that the violation of this act gives rise to a civil cause of action.

The trial court held that St. Vincent did not violate the statute, as the mere leasing of the hall did not constitute a lease of the premises for the serving of alcohol. Therefore, the trial court granted summary disposition for St. Vincent on the basis of a failure to state a claim. The Court of Appeals affirmed. This Court granted leave to appeal.

### B. GARDNER v OAK MANAGEMENT COMPANY

Plaintiffs filed a wrongful death action against defendant, Oak Management Company, alleging that it was negligent or grossly negligent in serving large quantities of intoxicating beverages to Willis Dalvin Wood, Jr., and that the serving of alcohol to Wood was a proximate cause of plaintiffs' decedent's death.

Oak Management Company, doing business as Fuller Oaks Corporation, is the management agent for the Addison Oaks Banquet Facility in Oxford, Michigan. Addison Oaks is a park owned by Oakland County located in Addison Township. Fuller Oaks rents the rooms and gardens of the facility to the public for parties and receptions. It also provides services and menus. Neither Fuller Oaks nor Oakland County has a liquor license for the premises, nor do they sell liquor upon the premises.

On June 6, 1982, Fuller Oaks rented the facility

to Douglas Maxwell and Mickey Donovan[2] for a wedding reception. Pursuant to the contract, Fuller Oaks provided food and bar service which included setups, napkins, condiments, and soft drinks. The wedding party supplied their own alcoholic beverages, while Fuller Oaks employees acted as bartenders at the reception.

Plaintiffs allege that Fuller Oaks negligently served intoxicating beverages to Wood, a guest at the party, while he was visibly intoxicated. Wood left the reception in his automobile, allegedly in an intoxicated condition, crossed the centerline of the road and struck plaintiffs' decedent.

Plaintiffs based their negligence claim against Fuller Oaks upon an alleged violation of MCL 436.26c(2); MSA 18.997(3)(2), hereafter referred to by its popular title, the bottle club act. Plaintiffs do not claim that the defendant is subject to the dramshop provision.[3] In denying defendant's motion for summary disposition, the trial court held that a violation of the act could give rise to a valid cause of action. From the Court of Appeals affirmance of this decision, we granted leave to appeal.

## II. THE BOTTLE CLUB ACT: SCOPE AND PURPOSE

A bottle club is typically described as "[a] place where no intoxicating liquors are sold but in which a member may keep his liquor for consumption on the premises and in which mixes or so-called 'set-ups' are provided by the club." Black's Law Dictionary (5th ed), p 168, citing *Mutchall v Kalamazoo,* 323 Mich 215; 35 NW2d 245 (1948).

---

[2] Douglas Maxwell and Mickey Donovan were added as defendants in plaintiffs' second amended complaint. As of this date, they have not been served.

[3] Counsel for plaintiff stipulated to an "order clarifying complaint" which stated that the complaint was not intended to set forth a claim based upon a purported violation of "the so-called dram shop act."

Originally, the Michigan Liquor Control Commission did not regulate bottle clubs. In 1949, the following "bottle club act" was promulgated:

> No person shall maintain, operate, lease or otherwise furnish to other persons any premises or place which is not licensed under this act, wherein such other persons may engage in the drinking of alcoholic beverages, for a fee or for any other consideration, including the sale of food, mixers, ice or other fluids used with alcoholic drinks or the storage of alcoholic liquors: Provided, That the provisions of this section shall not apply to any hotel nor to any licensee under the provisions of this act: Provided further, That the provisions of this section shall not be construed to repeal or amend the provisions of section 26b of this act. [1949 PA 295, MCL 436.26c; MSA 18.997(3).]

In *Moraco v Wayne Co Prosecutor,* 98 Mich App 322; 296 NW2d 246 (1980), at issue was whether plaintiff's unlicensed restaurant constituted a "bottle club." Plaintiffs sold dinners at the restaurant for a fixed price and permitted customers to bring their own wine which they consumed from plaintiff's glasses. The Court of Appeals concluded that the sale of food did not make the establishment subject to § 26c since no extra money passed to the owners as a result of patrons furnishing their own alcohol and stated, "[h]ad the Legislature wished to prohibit plaintiff's activity it could have explicitly done so." *Id.,* p 327.

Shortly thereafter, the Legislature amended the act to read as follows:

> (1) A person shall *not* maintain, operate, lease, or otherwise furnish to *any person,* any premises or place which is not licensed under this act, *where the* other *person* may engage in the drinking of alcoholic *liquor* for any consideration.

(2) *A person shall not consume alcoholic liquor in a commercial establishment selling food if the commercial establishment is not licensed under this act. A person owning, operating, or leasing a commercial establishment selling food which is not licensed under this act shall not allow the consumption of alcoholic liquor on its premises.*

(3) This section shall not apply to any hotel *or* any licensee under this act.

(4) This section shall not be construed to repeal or amend section 26b.

(5) *As used in this section, "consideration" includes any fee, cover charge, the storage of alcoholic liquor, the sale of food, ice, mixers, or other liquids used with alcoholic liquor drinks, or the furnishing of glassware or other containers for use in the consumption of alcoholic liquor in conjunction with the sale of food.* [1980 PA 185. Emphasis added.]

Unlicensed commercial establishments selling food were strictly prohibited from allowing the consumption of alcohol on those premises in response to the situation in *Moraco v Wayne Co Prosecutor, supra,* where the consideration for the privilege and accommodation of the alcohol consumption was included in the price of the meal. By this amendment, the Legislature intended to assist in the enforcement of the bottle club act, and thus to protect the integrity of the franchise given to licensed establishments. Subjecting all unlicensed commercial establishments selling food to criminal penalties seeks to eliminate the risk that the consideration paid for the consumption of alcohol will be included in the price of the food.

Hence, giving it a plain reading, the statute permits unlicensed commercial halls or facilities to allow persons on their premises to consume alcoholic liquor which the persons have provided for themselves as long as the commercial hall or

facility does not require any consideration for that privilege and as long as the commercial hall or facility does not sell food. Unlicensed nonprofit halls or facilities may also permit persons on their premises to furnish and consume their own alcohol provided that no additional consideration as defined in the statute is exchanged for that privilege.

In rejecting a constitutional challenge that the act's purpose was not within the title of the Liquor Control Act, the Court in *Beacon Club v Kalamazoo Co Sheriff,* 332 Mich 412, 421; 52 NW2d 165 (1952), summarized the purpose of § 26c:

> Its purpose was, as the language used clearly indicates, to regulate the use of intoxicating liquors. To that end the furnishing of premises not licensed under the act where liquor may be consumed and the sale of food and other articles to promote drinking thereon were forbidden. The inhibition was not directed in terms against the traffic in liquor or the use thereof, but rather against the owners and operators of unlicensed premises. The regulation imposed is analogous to other provisions of the liquor control act relating to the granting of licenses for locations within a certain distance from churches or school buildings, forbidding sales to minors, and imposing restraints on the furnishing of alcoholic liquor on Sundays and election days and on drinking on public highways and in certain other public places.[4]

---

[4] In *Mutchall v Kalamazoo, supra,* 221, a similar purpose was assigned to an almost identical Kalamazoo ordinance enacted before the original bottle club act:

> The ordinance states that there is no law or statute at the present time regulating the use of alcoholic liquor purchased by an unincorporated association or by persons who have made their own purchases of liquor and who congregate upon premises maintained for the express purpose of drinking alcoholic liquor which they own. It further states that the maintenance and operation of such premises for such purposes often gives rise to assaults, general delinquency and allied problems, and

In disposing of appellants' equal protection challenge that the statute created an unreasonable classification by excluding licensees and hotels from its operation, the Court reiterated that the purpose of the statute was the proper control of liquor traffic in the manner authorized and contemplated by the constitution of the state. 332 Mich 426. We agree with the Court's construction of the statute.

As part of the alcohol regulatory scheme, the bottle club act protects against the inherent dangers of alcohol by bringing the serving of alcohol for profit under strict regulations. The strictures of the statute are directed toward nonlicensed premises owners who may profit from the activity of alcohol consumption without obtaining a license. It is not the amount of alcohol consumed, or the service of alcohol to a visibly intoxicated person or minor that is controlled under the act, but the source of alcohol and where it is consumed. The bottle club statute's purpose is to maintain complete and exclusive control of liquor traffic in a Liquor Control Commission established by the Legislature.

---

that inasmuch as such premises are commonly operated after the closing hours of taverns and other establishments selling alcoholic drinks, it creates an additional police problem; that it is the duty of police officers to repress, prevent crime and prosecute violations of [1933 (Ex Sess) PA 8] where applicable to "bottle clubs" but the premises are not subject to the provisions of the Michigan liquor control act. The ordinance was adopted for the preservation of the public safety, health and morals and for the purpose of licensing and inspecting premises not under the jurisdiction of the Michigan liquor control commission.

### III. DOES VIOLATION OF THE BOTTLE CLUB ACT CREATE A CAUSE OF ACTION FOR NEGLIGENCE IN THESE CASES?

### A. THE TEST FOR DETERMINING WHEN THE VIOLATION OF A PENAL STATUTE GIVES RISE TO A CIVIL CAUSE OF ACTION.

Section 50 of the Liquor Control Act provides criminal penalties for violations of the provisions of its act. MCL 436.50; MSA 18.1021. Section 26c of the act is a penal statute providing punishment for violations of its mandates. Compare *Longstreth v Gensel,* 423 Mich 675, 692; 377 NW2d 804 (1985), holding that § 33 of the act prohibiting the furnishing of alcoholic liquors to minors is a penal statute.

Where a penal statute is silent concerning whether a violation of its provisions should give rise to a civil remedy, courts will infer a civil remedy for the violation "to further the ultimate policy for the protection of individuals which they find underlying the statute, and which they believe the legislature must have had in mind." Prosser & Keeton, Torts (5th ed), § 36, p 222. The civil remedy may be afforded through an existing tort action or a new cause of action analogous to an existing tort action.[5] If there is no common-law tort sufficiently analogous to fit the situation, a

---

[5] When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action. [4 Restatement Torts, 2d, § 874A, p 301.]

new tort may be created for the purpose. 4 Restatement Torts, 2d, § 874A, comment f, p 304.

In the interest of public policy, this Court has created a new cause of action to redress the violation of a penal statute and, pursuant to the following test, incorporated the statute as the specific standard of care:

> "The court may adopt as the standard conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> "(a) to protect a class of persons which includes the one whose interest is invaded, and
>
> "(b) to protect the particular interest which is invaded, and
>
> "(c) to protect that interest against the kind of harm which has resulted, and
>
> "(d) to protect that interest against the particular hazard from which the harm results." [*Longstreth, supra,* pp 692-693, quoting Restatement Torts, 2d, § 286, p 25. See also *Zeni v Anderson,* 397 Mich 117, 137-138, ns 21, 22; 243 NW2d 270 (1976); Prosser & Keeton, Torts (5th ed), § 36, pp 229-230; 57 Am Jur 2d, Negligence, §§ 257-258, pp 641-643; SJI2d 12.01.]

Where the court concludes that the statutory purpose was not to protect the person allegedly injured, or even if it was, that the harm suffered was not what the Legislature intended the statute to remedy, *Zeni, supra,* the court may conclude that the statute is not applicable to the facts of the case before it.[6]

---

[6] The United States Supreme Court in the landmark case, *Cort v Ash,* 422 US 66, 78; 95 S Ct 2080; 45 L Ed 2d 26 (1975), considered the following factors when determining whether the violation of a penal statute might give rise to a private remedy:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R Co v*

*Rigsby,* 241 US 33, 39 [36 S Ct 482; 60 L Ed 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, e.g., *National Railroad Passenger Corp v National Assn of Railroad Passengers,* 414 US 453, 458, 460 [94 S Ct 690; 38 L Ed 2d 646] (1974) *(Amtrak).* Third, is it consistent with the underlying purposes of the legislative scheme to imply [sic] such a remedy for the plaintiff? See, e.g., *Amtrak, supra; Securities Investor Protection Corp v Barbour,* 421 US 412, 423 [95 S Ct 1733; 44 L Ed 2d 263] (1975); *Calhoon v Harvey,* 379 US 134 [85 S Ct 292; 13 L Ed 2d 190] (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v Wheeler,* 373 US 647, 652 [83 S Ct 1441; 10 L Ed 2d 605] (1963); cf. *J I Case Co v Borak,* 377 US 426, 434 [84 S Ct 1555; 12 L Ed 2d 423] (1964); *Bivens v Six Unknown Federal Narcotics Agents,* 403 US 388, 394-395 [91 S Ct 1999; 29 L Ed 2d 619] (1971); *id.,* at 400 (Harlan, J., concurring in judgment).

*Cort v Ash* marks the beginning of a trend in the federal courts to reserve the creation of civil remedies from penal violations only where to do so is clearly consistent with affirmative legislative intent. See, e.g., *Daily Income Fund, Inc v Fox,* 464 US 523, 535-536; 104 S Ct 831; 78 L Ed 2d 645 (1984) ("In evaluating such a claim, our focus must be on the intent of Congress when it enacted the statute in question"); *Middlesex Co Sewerage Authority v Nat'l Sea Clammers Ass'n,* 453 US 1, 13; 101 S Ct 2615; 69 L Ed 2d 435 (1981) ("The key to the inquiry is the intent of the Legislature"); *Texas Ind, Inc v Radcliff Materials, Inc,* 451 US 630, 639; 101 S Ct 2061; 68 L Ed 2d 500 (1981) ("Our focus, as it is in any case involving the implication of a right of action, is on the intent of Congress"); *California v Sierra Club,* 451 US 287, 293; 101 S Ct 1775; 68 L Ed 2d 101 (1981) ("[T]he ultimate issue is whether Congress intended to create a private right of action"); *Northwest Airlines, Inc v Transport Workers,* 451 US 77, 91; 101 S Ct 1571; 67 L Ed 2d 750 (1981) ("The ultimate question in cases such as this is whether Congress intended to create the private remedy"); *Transamerica Mortgage Advisors, Inc v Lewis,* 444 US 11, 15; 100 S Ct 242; 62 L Ed 2d 146 (1979) ("The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction"); *Touche Ross & Co v Redington,* 442 US 560, 568; 99 S Ct 2479; 61 L Ed 2d 82 (1979) ("The question of the existence of a statutory cause of action is, of course, one of statutory construction").

This cautious approach is not only out of deference to Congress, but also to the states in areas traditionally committed to state law. It represents a retrenchment of the unpredictable and possibly disasterous consequences of applying a legislative purpose theory to federal laws and progression toward a safe and certain methodology for

Thus, our determination should not only be consistent with legislative intent, but should further the purpose of the legislative enactment.

Involved in the case at bar is a comprehensive legislative scheme creating new and particular remedies against persons not liable at the common law and vesting exclusive control of the licensing, taxation, sale, or distribution of alcoholic liquors in the state for the benefit of the public. While it is part of the court's historic common-law function to develop the law, a degree of caution must be exercised in fashioning civil remedies where a balance struck by a comprehensive regulatory scheme could be undermined.[7]

### B. APPLICATION OF THE TEST TO THESE CASES

In *Kiliszewski v St Vincent,* the trial court dismissed the complaint against St. Vincent on the basis that the mere renting of the hall did not bring the defendant under the bottle club act. The Court of Appeals agreed that the bottle club act did not impose civil liability upon St. Vincent without discussing whether violation of the act could create a rebuttable presumption of negligence in a claim for injuries arising from the intoxication of a person who consumed alcohol on the unlicensed premises. The Court of Appeals

inferring private actions that will cause Congress to be more cognizant of its actions. See, generally, Foy, *Some reflections on legislation, adjudication, and implied private actions in the state and federal courts,* 71 Cornell L R 501, 548-565, 571 (1986); Comment, *Private rights of action under* Amtrak *and* Ash: *Some implications for implication,* 123 U Pa L R 1392 (1975).

[7] It could also work against an agency's objectives and result in overenforcement of regulations. In certain regulatory schemes, this could result in upsetting the delicate balance created by the Legislature. See, generally, O'Neil, *Public regulation and private rights of action,* 52 Cal L R 231, 261-267 (1964); Frankel, *Implied rights of action,* 67 Va L R 553 (1981); Comment, *Private rights of action,* n 6 *supra.*

understood plaintiffs' argument to impose liability pursuant to the dramshop provision of the Liquor Control Act. MCL 436.22; MSA 18.993. Citing *Guitar v Bieniek,* 402 Mich 152, 167; 262 NW2d 9 (1978), the Court of Appeals concluded that St. Vincent, as the lessor of the hall, did not fall within the class of persons liable under the dramshop provision. Therefore, the trial court's grant of summary judgment with regard to the dramshop count was affirmed.

On appeal to this Court, plaintiffs contend that the purpose of the statute is to prevent circumvention of the Liquor Control Act "by placing the duty to insure proper licensing, which would include the obtaining of a special license when needed, on the property owner, thereby protecting the general public from the very abuses that occurred." Plaintiffs do not argue that St. Vincent violated the bottle club act because it directly allowed persons on its unlicensed premises to engage in drinking of alcohol for a consideration. Rather, plaintiffs argue that St. Vincent should be held responsible for the alcohol-related accident because St. Vincent knew or should have known that the Schullos intended to furnish intoxicating liquors at the bunny hop without obtaining the requisite liquor license.

In the companion case before us, *Gardner v Wood,* 150 Mich App 194; 388 NW2d 276 (1986), the plaintiffs urge us to affirm the holding of the Court of Appeals. The Court of Appeals concluded that defendant was in violation of subsection 2 of that act and, applying § 286 of the Restatement of Torts, 2d, found that the alleged violation was sufficient to create a prima facie case of negligence:

Applying this analysis, we find that the alleged violation of MCL 436.26c(2); MSA 18.997(3)(2) was sufficient to preclude summary judgment. The statute was meant to protect a class of persons. The class of persons protected by the statute extends beyond licensees whose economic interests may be harmed if unlicensed commercial establishments selling food are permitted to allow the consumption of alcohol on their premises. As noted above, the statute, as amended in 1980, regulates more than "bottle club" activity that could threaten the economic interests of licensees. The statute now, in part, protects all persons who come into contact with customers of unlicensed commercial establishments selling food. Plaintiff falls within this protected class.

The statute in part protects a particular interest, i.e., freedom from injury caused by the consumption of alcohol on the premises of an unlicensed commercial establishment selling food. The statute was also intended to protect against the kind of harm which resulted, i.e., injury and death. And lastly, the statute was meant to protect against a particular hazard, i.e., the substantially expanded exposure to harm resulting from the dangerous effects of intoxication if unlicensed commercial establishments selling food were permitted to allow customers to consume alcohol on the premises.

Based on this analysis, we conclude that the trial judge properly determined that plaintiff can maintain a cause of action based on defendant's violation of MCL 436.26c(2); MSA 18.997(3)(2). The violation of the statute creates a prima facie rebuttable presumption of negligence. We note that plaintiff must still establish before a trier of fact that defendant's violation of the statute was a proximate cause of plaintiff's decedent's death. However, we are unable to state that plaintiff's cause of action is precluded as a matter of law. Therefore, the trial judge properly denied defendant's motion for summary judgment based on plaintiff's failure to state a claim. [150 Mich App 202-204.]

Whether the bottle club act was violated need not be addressed in either of these cases because we hold that the hazard presented by the furnishing of alcohol to an intoxicated person is not the hazard which the bottle club act was intended to eliminate. Plaintiffs seek to impose a duty under the bottle club act which is analogous to that imposed upon a licensee under the dramshop provision to refrain from serving alcohol to a minor or a visibly intoxicated person. MCL 436.22; MSA 18.993. We recognize that if the penal provisions of the bottle club act were successfully enforced, one by-product would be that liquor would only be consumed for a consideration in circumstances where the licensees' obligations would protect persons injured by a minor or a visibly intoxicated person. While creation of a cause of action under the bottle club act would promote effectiveness by imposing on nonlicensees the financial incentive to avoid liability in addition to the incentive to avoid criminal penalties, we are constrained to conclude that this is a matter for legislative resolution. We decline to impose such a duty under either subsection (1) or (2) of the act for several reasons.

At common law, there was no cause of action against a person for recovery of damages due to the unlawful serving of intoxicating beverages. *Longstreth v Gensel, supra.* The Legislature filled the gap existing at common law through enactment of the dramshop provision which created a remedy for that wrong. *Id.* Though the option to create a similar remedy for violations of the bottle club act clearly existed, the option has gone unexercised.

Further, in *Guitar v Bieniek, supra,* this Court refused to find that a bottle club nonlicensee came within the civil liability provision of § 22 of the Liquor Control Act. In *Guitar,* the nonlicensee

lessor, Alcamo's Hall, Inc., rented its hall for a wedding reception where alcohol was to be consumed and provided a waiter and facilities for dispensing the alcoholic beverages. The alcohol which was consumed on the premises was privately furnished by the celebrants with the exception of a keg of beer which was provided at retail cost by Alcamo's.

While this Court recognized in *Guitar* that non-licensees who engaged in operations tantamount to those engaged in by licensees are equally chargeable under § 22, the "dramshop" provision of the Liquor Control Act, the Court held that Alcamo's did not fit within the category of "persons" subject to that provision. The purpose of the civil liability provision in § 22 was

> to impose a special legal duty upon a group of retailers who the Legislature may have believed needed additional encouragement to subject their immediate pecuniary interests to the ultimate welfare of their patrons and society as a whole. That encouragement has been made to consist in part of the resultant vicarious liability. [*Id.,* p 167.]

In the case of Alcamo's, the manifest legislative purpose was inapposite. "Whereas the class of retailers specifically named in § 22 may be directly proprietorily motivated to dispense 'that additional drink' which is 'one too many,' such motivation is totally inapplicable to a social setting in which the alcohol is supplied as a mere social amenity." *Id.*

Justice Mooᴅʏ, dissenting in that case, would have applied the following test to determine whether a catering establishment was subject to liability pursuant to the dramshop provision:

> Thus, I would hold a catering hall subject to liability which (1) permits the consumption of

intoxicating beverages on its premises, (2) supplies any of those intoxicating beverages for a specific fee *or* as an accommodation for other rental considerations, and (3) *provides a person to dispense such beverages.* When combined, such activities are tantamount to those of a retailer and are subject to the dramshop provision of the Liquor Control Act. [*Id.,* p 171. Emphasis supplied.]

Under Justice MOODY's view, Alcamo's would have been a "retailer" as defined in the Liquor Control Act and therefore subject to the civil liability provision of § 22.

Although potential liability under the bottle club act was not discussed in *Guitar,* the message was manifest that this Court would not attach civil liability to the conduct at issue absent express direction from the Legislature. *Guitar* was decided two years before the Legislature amended the bottle club act to prohibit commercial establishments selling food from allowing the consumption of alcohol on the premises. Despite its recent opportunities to consider providing a remedy for such an alleged wrong, the Legislature's subsequent silence on the issue of civil liability suggests legislative approval of the Court's conclusion that civil liability did not extend to such a situation.

The facts in *Gardner* are substantially different than those in *Kiliszewski.* In *Gardner,* Fuller Oaks not only rented the facility, but its employees acted as bartenders serving intoxicants at the wedding reception. These facts bear close resemblance to those in *Guitar.* We note, however, that under either the majority or dissenting view in *Guitar* Fuller Oaks would not be subject to the civil liability provision of the Liquor Control Act since none of the alcoholic beverages consumed at the wedding reception was provided by Fuller Oaks. If the Legislature's balancing of "social and

financial interest" in the civil liability provisions of § 22 excludes situations in which the alcohol has been supplied to a lessee, *Guitar, supra,* pp 167-168, inferring a civil cause of action for violation of the bottle club act would seem to be an inconsistent intrusion into the regulatory scheme.

A rule of construction provides that immunities of the common-law no-duty rules are not affected by criminal statutes unless the Legislature also provides for civil liability in express terms or by clear implication. *Flanagan v Sanders,* 138 Mich 253; 101 NW 581 (1904); *Tair v Rock Investment Co,* 139 Ohio St 629; 41 NE2d 867 (1942). While application of this rule may not be always appropriate,[8] this Court is constrained to apply it in this case where the option to create civil consequences remains unexercised.

Finally, we note that even licensees may not allow patrons to consume their *own* alcohol on the premises. While statutorily exempt from the bottle club act, MCL 436.26c(3); MSA 18.997(3)(3), licensees are subject to 1980 AACS, R 436.1033, which provides in pertinent part:

> A retail licensee shall not sell, offer for sale, accept, furnish, possess, *or allow the consumption of, alcoholic liquor on his or her licensed premises which has not been purchased by the retail licensee from the commission or a licensee of the commission who is authorized to sell the alcoholic liquor to a retail licensee.* [Emphasis added.]

Thus, neither licensees (dramshops) nor nonlicensees (defendants here) may allow patrons to furnish and consume their own alcohol on the premises. If a licensee violated the above regulation, the licensee would be subject to sanction by

---

[8] Cf. *Longstreth, supra.*

the Liquor Control Commission. The licensee could lose the license, but civil liability would arise only under the dramshop provision. The dramshop provision provides for civil liability when a person is injured because of the "unlawful selling, giving, or furnishing" to a visibly intoxicated person. MCL 436.22; MSA 18.993. "Sale" is defined under the code to include "exchange, barter or traffic, furnishing or giving away any alcoholic liquor." MCL 436.2n; MSA 18.972(14). Allowing individuals to consume their *own* alcohol would not meet the requirement of an unlawful sale or necessarily constitute a furnishing under the dramshop provision. Therefore, a violation by a licensee of the administrative regulation does not necessarily result in the imposition of civil liability pursuant to the exclusive remedy of the dramshop provision. Similarly, a nonlicensee who violated the analogous bottle club act by allowing the consumption of liquor for a consideration would be subject to criminal prosecution, but, by parallel reasoning, would not be subject to civil liability.

The plaintiff in *Gardner* relies on *Waynick v Chicago's Last Dep't Store,* 269 F2d 322 (CA 7, 1959), for the proposition that "where there is no liquor control act creating a civil cause of action but there is a penal provision concerning an illegal sale, then a common-law cause of action would arise." *Jones v Bourrie,* 369 Mich 473, 476; 120 NW2d 236 (1963). However, the bottle club act under which the plaintiffs attempt to establish defendant's duty has nothing to do with an *illegal sale.* Because *Waynick* involved a cause of action stemming from an illegal sale, it cannot be extended to this case which involves *no sale* of alcoholic beverages at all. An illegal sale may give rise to a cause of action because the retailer has the ultimate control over whether the sale takes

place. When intoxicated persons consume their *own* alcohol, the element of control based on sale disappears.

Reliance on *Longstreth, supra,* is also misplaced. *Longstreth* is similar to *Waynick* and dissimilar to this case because it is based on the furnishing of alcohol. Moreover, the statute in *Longstreth* which prohibited the furnishing of alcohol to minors was much more closely related to the protection of the minor who was the plaintiff in that case both in terms of legislative intent and proximate cause. In *Longstreth,* the Court found that compliance with the statute, i.e., nonservice to a minor, would have helped prevent the very harm incurred by the plaintiff.

In the instant cases, compliance with the statute might not have prevented the type of harm the plaintiffs suffered. Under the act, an owner of unlicensed noncommercial or commercial premises may allow the consumption of alcohol on the premises as long as no consideration is exchanged for that privilege. The statute does not preclude the drinking of alcohol on unlicensed premises. The statute precludes the exchange of consideration for the privilege of consuming alcohol on unlicensed premises. Thus, the potential for harm at the hands of intoxicated persons will continue to exist even where there is compliance with the act.

### CONCLUSION

We conclude that a violation of the bottle club act does not give rise to a claim of negligence. The statute as a whole falls within the category of regulations intended only for the protection of the public at large by creating an obligation to the

state. See 2 Restatement Torts, 2d, § 288(a)(b).[9] The main purpose of the bottle club act is to assist in the enforcement and preservation of the licensing provisions of the Liquor Control Act. It has for its general purpose the preservation of the public safety, health, and morals, by creating an obligation to the state in owners and operators of unlicensed premises to refrain from allowing the consumption of alcohol on the premises for a fee. It is intended to make the actor responsible to the state, rather than to any individual. See comment on clause (c), 2 Restatement Torts, 2d, § 288.

The bottle club act is not designed to protect against the harm suffered by plaintiffs. Compliance with the act may result in alcohol consumption only on licensed premises, but it is compliance with the dramshop provision that would avoid the harm involved here.

---

[9] § 288. When Standard of Conduct Defined by Legislation or Regulation Will Not Be Adopted

The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

(a) to protect the interests of the state or any subdivision of it as such, or

(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or

(c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or

(d) to protect a class of persons other than the one whose interests are invaded, or

(e) to protect another interest than the one invaded, or

(f) to protect against other harm than that which has resulted, or

(g) to protect against any other hazards than that from which the harm has resulted.

This section recognizes that while every statute must be justifiable as necessary to the general public's health, safety, and welfare, statutes also may have an exclusive purpose which has no relation to a particular plaintiff's class, interest, injury, or harm suffered.

Therefore, it cannot be concluded that a civil remedy for the harm incurred in these cases either was intended by the Legislature or is consistent with the legislative scheme which allows the consumption of alcohol on unlicensed premises as long as there is no profit flowing from that conduct.

The appellants in *Kiliszewski* raised other claims of error which we find merit no further consideration. The Court of Appeals decision in *Kiliszewski* is affirmed, while the Court of Appeals decision in *Gardner* is reversed.

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with BOYLE, J.