# STATE OF MICHIGAN

# COURT OF APPEALS

JASMINE FARES ABAZEED, IMAD SHARAA, NOUR ALKADI, and TAREK ALSHARA,

Plaintiffs-Appellees/Cross Appellants,

v

AHMAD AWAD and SHIRIN KAIAL,

Defendants-Appellants/Cross-Appellees.

UNPUBLISHED
March 22, 2018

No. 337355
Washtenaw Circuit Court
LC No. 16-000207-NO

Before: STEPHENS, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this premises liability case, defendants appeal by leave granted[1] and plaintiffs cross-appeal the trial court's order denying in part and granting in part defendants' motion for summary disposition. For the reasons set forth below, we affirm.

## I. FACTS

On January 21, 2016, defendant Kaial hosted a party at the home she owned with her husband, defendant Awad. The party started around 11:00 a.m., and approximately 25 to 30 women attended, among whom were plaintiffs Abazeed and Alkadi. Plaintiff Alkadi arrived at the party around 11:00 a.m. with her children and her mother-in-law. After exiting her car, she walked across the grass to defendants' front door. After some time, she went outside to move her car for a neighbor and walked down the concrete walkway leading from the front door to the sidewalk. While doing so, she slipped on ice and fell, sustaining injury.

Plaintiff Abazeed arrived at defendants' home around noon with her mother and newborn baby. She also walked on the grass to enter defendants' home, but a few minutes later, she went back out to retrieve something from her car. To do so, she walked down defendants' driveway.

---

[1] *Abazeed v Awad*, unpublished order of the Court of Appeals, entered April 18, 2017.

-1-

As she did so, she slipped on ice and fell, sustaining injury. Plaintiffs filed a complaint against defendants alleging premises liability, ordinary negligence, and violation of building codes. Defendants brought a motion for summary disposition. As to the premises liability count, defendants argued that plaintiffs were licensees, and that there was no evidence that any duty to licensees was violated. As to the other counts, defendants argued that such claims were not independent of a premises liability claim and so should be dismissed. The trial court denied defendants' motion as to the premises liability claim, but granted it as to the negligence and building code claims.

## II. DEFENDANTS' APPEAL

Defendants argue on appeal that there is no question of fact whether they violated their duty to plaintiffs who were licensees. A landowner owes a licensee

> a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit. [*Bailey v Schaaf*, 494 Mich 595, 641; 835 NW2d 413 (2013) (citation omitted).]

Defendants assert that the trial court erred because there is no evidence to contradict their assertion that: (1) they had no knowledge of the conditions, and (2) that the conditions were visible to plaintiffs.[2] The first of these arguments is easily addressed. A witness, Nada Ammoun, testified that *before* plaintiffs fell, she informed defendant Kaial of the conditions and the need to salt the premises. That testimony establishes a question of fact whether defendants knew of the dangerous condition. The second argument also fails because there is substantial evidence that the icy condition was not visible as the weather conditions were not such as to render the black ice open and obvious. Plaintiff Alkadi testified that when she arrived at defendants' home around 11:00 a.m., the weather was cold, but there were no snowflakes coming down and there was no snow on the grass, or other indicia of icy conditions. She traversed the walkway on more than one occasion and saw no ice. Defendant Kaial testified that she saw plaintiff Alkadi slip and fall on the walkway, and rushed out to help her. While outside, she looked around the area where plaintiff Alkadi had fallen, and observed that there was no ice, snow, or any wetness. She described the walkway as being "perfectly dry." Similarly, plaintiff

---

[2] This Court reviews de novo a trial court's decision to grant summary disposition under MCR 2.116(C)(10). *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). The court considering the motion "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Joseph*, 491 Mich at 206. All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010).

Abazeed testified that she saw no ice and only discovered it when she felt the ground after falling. Given this evidence, we agree with the trial court that there is evidence to support plaintiffs' claim that the conditions were not easily observable on casual inspection.

Accordingly, we agree with the trial court that there are questions of material fact as to the premises liability claim and that summary disposition as to that claim was properly denied.

### III. PLAINTIFFS' CROSS APPEAL

In their cross-appeal, plaintiffs argue that the trial court erred in granting defendants' motion for summary disposition with respect to their ordinary negligence and building code claims. We disagree.

Plaintiffs submitted evidence, through the affidavit of witness Steven Ziemba, a safety expert, that defendants violated the provisions of the International Property Maintenance Code by placing a splash block at the base of a downspout such that the water from the roof of the house was released onto the walkway where it pooled and froze. After inspecting defendants' premises on June 28, 2016, Ziemba reached, *inter alia*, the following conclusions:

> 7. Th[e] ice [was] an unnatural accumulation as it formed from the discharge of roof water. The defendant had placed a splash block at the base of the downspout which directed the water onto the walkway pavement. The slope measurements I took at my inspection confirm that water would pool at this spot. This transparent accumulation of unnatural ice that formed and caused them to slip would form upon contact with the colder concrete pavement and continue to spread and increase in size as water continues to drain down the walkway and down the driveway and down the driveway as it discharged from the downspout.
>
> * * *
>
> 9. The Michigan Building Code stated that the provisions of the International Property Maintenance Code shall apply to all existing structures and premises. The applicable 2012 edition of the International Property Maintenance Code (IPMC) states the following:
>
> 301.2 Responsibility- The owner of the premises shall maintain the structures and exterior premises in compliance with these requirements.
>
> 302.3 Sidewalks and Driveways- All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions.
>
> 304.7 Roofs and drainage- Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance.
>
> The defendants are in violation of the above sections of the IMPC.

Plaintiffs' briefing is imprecise as to whether the building code violations are the basis of their negligence claim or give rise to an independent cause of action. In either case, we conclude that the trial court properly dismissed the claim. In *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691-692; 822 NW2d 254 (2012), this Court held:

> If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury.

In light of *Buhalis*, the existence of ordinary negligence, even if active, does not create a cause of action outside the premises liability paradigm if the injury was due to a condition on the premises.

In support of their claim regarding code violations, plaintiffs rely on the provisions of the International Property Maintenance Code, which has been adopted by the Michigan Building/Construction Code, MCL 125.1501 *et seq.*, MCL 125.1504, and the Michigan Administrative Code, R 408.30401, Rule 401.[3] Plaintiffs argue that because this Code has been adopted by state statute, it gives rise to a private cause of action. Plaintiffs relies on the four-part test enumerated in *Gardner v Wood*, 429 Mich 290; 414 NW2d 706 (1987), to impose liability on defendants. In *Gardner*, the issue was whether a civil cause of action for damages could be maintained against a premises owner for a violation of the bottle club act, MCL 436.26c. *Id*. at 296. The Court utilized a test from the Second Restatement of Torts to hold that a cause of action could be created to redress a statutory violation:

> The court may adopt as the standard conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> (a) to protect a class of persons which includes the ones whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) to protect that interest against the particular hazard from which the harm results. [*Gardner*, 429 Mich at 302-304 (quotation marks and citations omitted).]

---

[3] It was also adopted by the City of Ypsilanti (Ordinance Article V, section 18-91), but plaintiffs do not refer us to any cases in which an ordinance was held to give rise to a private right of action.

Arguably, the code requirements meet this four-factor test. Plaintiffs were among the class of persons to be protected, i.e. persons traversing the walkway and driveways of properties and the harm to be prevented is injury to such persons. However, *Gardner* went on to state:

> Where a penal statute is silent concerning whether a violation of its provisions should give rise to a civil remedy, courts will infer a civil remedy for the violation to further the ultimate policy for the protection of individuals which they find underlying the statute, and which they believe the legislature must have had in mind. The civil remedy may be afforded through an existing tort action or a new cause of action analogous to an existing tort action. If there is no common-law tort sufficiently analogous to fit the situation, a new tort may be created for the purpose. [*Gardner*, 429 Mich at 301-302 (quotation marks and citations omitted).]

Plaintiffs do have a "common-law tort sufficiently analogous to fit the situation," i.e. a premises liability suit.[4] Thus, the statute, which is silent as to remedy, should not be read to create one under these circumstances.

Further, in *Lash v Traverse City*, 479 Mich 180, 191-193; 735 NW2d 628 (2007), the Michigan Supreme Court indicated that a private cause of action could not be maintained "in the absence of evidence of legislative intent" to create one. Plaintiffs' argument that this Court should ignore the ruling in *Lash* because it did not "impugn the validity of the *Gardner* test," is without merit. The *Lash* Court considered the test articulated in *Gardner*, but held that in the absence of evidence of legislative intent to create such a remedy one should not be inferred.[5] Here, plaintiffs have not directed us to any evidence of legislative intent to create such a remedy.[6] Accordingly, we conclude that plaintiffs have failed to establish that the statute provides a private cause of action.

---

[4] "[A] statutory remedy for enforcement of a common-law right is deemed only cumulative." *Pompey v Gen Motors Corp*, 385 Mich 537, 553; 189 NW2d 243 (1971).

[5] According to the *Lash* Court:

> While the four-factor test [in *Gardner*] focused exclusively on the purpose of the statute, *Gardner* further observed that the purpose of the statute alone was an insufficient basis for inferring a private right of action. Rather, *Gardner* held that the "determination [to infer a private cause of action] should not only be *consistent with legislative intent*, but should further the purpose of the legislative enactment." *Gardner* held that a cause of action could not be maintained because it was inconsistent with the intent of the Legislature, indicating that the imposition of a private cause of action was "a matter of legislative resolution." [*Lash*, 479 Mich at 193.]

[6] By contrast, MCL 554.139 mandates that "in every lease or license of residential premises, the lessor or licensor *covenants*" to keep the premises fit for intended uses. Thus, the statute creates

Similarly, plaintiffs' claim that the installation of the downspout violates various Ypsilanti codes, and so is grounds for an independent claim of negligence also fails. Plaintiffs provide no authority in support of their suggestion that a violation of an ordinance should give rise to a private right of action. The only cases cited by plaintiffs in this regard state that an ordinance violation is evidence of negligence; none hold that an ordinance violation gives rise to a private right of action in negligence where the claim would otherwise be limited to a premises liability action.[7]

Affirmed. No costs as neither party have prevailed in full.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause

---

a duty flowing directly from the lessor to the tenant. In addition, that statute provides that "the provisions of this section shall be liberally construed."

[7] Our decision to affirm the dismissal of the building code violations count should not be read to suggest that the evidence of the alleged violations is inadmissible. Such evidentiary issues are not before us and are properly left to the discretion of the trial court.