*Michigan Supreme Court*
*Lansing, Michigan 48909*

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

# Opinion

**FILED JULY 17, 2001**

MICHAEL LEE, BRYAN DUNCIL, MARY
DUNCIL on behalf of herself and
JOSEPH DUNCIL, BRYAN DUNCIL, KENNETH
DUNCIL, and JON DUNCIL, as their
Next Friend, and the class of all
others similarly situated,

    Plaintiff-Appellees,

v                              No. 114700

THE MACOMB COUNTY BOARD OF
COMMISSIONERS, and the COUNTY OF
MACOMB,

    Defendant-Appellants.

_____

DENNIS D. WALKER, on behalf of
himself and DAWNELL J. WALKER and
MELANIE WALKER, their Next Friend,
and DWAYNE STEAGALL, ERNEST GROCE,
JERRY GRAY, PAUL ECKLEY, DUANE GORE,
KENNETH JONES, MORRIS BARTOLOTTA, and
the class of all others similarly
situated,

    Plaintiffs-Appellees,

v                              No. 115259

THE WAYNE COUNTY BOARD OF
COMMISSIONERS and THE COUNTY
OF WAYNE,

    Defendants-Appellants.
_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

At issue in these two cases coming to us from Macomb and Wayne counties is whether these plaintiffs have standing to pursue actions to compel their respective county board of commissioners to levy a tax to establish a veterans' relief fund in accordance with the soldiers' relief fund act, MCL 35.21 *et seq.* It is uncontested that none of the plaintiffs actually had sought relief under the act. Because of this, the counties asserted that these litigants had suffered no injury and, accordingly, that plaintiffs (1) were without standing to sue and (2) had failed to exhaust statutory remedies. In *Lee*, the Macomb County case, the trial court granted summary disposition for the county on those grounds. In *Walker*, the Wayne County case, the trial court denied the county's motion for summary disposition, concluding that plaintiffs had standing and were not required to exhaust statutory remedies because they alleged a complete failure to comply with the act. The Court of Appeals consolidated the appeals and largely reversed in *Lee* and affirmed in *Walker*. 235 Mich App 323; 597 NW2d 545 (1999). It concluded that

2

plaintiffs had standing to sue to compel implementation of the act and that mandamus was a proper remedy.  We reverse.

Statutory Analysis

In these actions, plaintiffs seek to compel the legislative branch of the county government, the board of commissioners, to levy a tax to establish a veterans' relief fund pursuant to the soldiers' relief fund act.  MCL 35.21 provides in pertinent part:[1]

> The county board of commissioners of each county shall annually levy, a tax not exceeding 1/10 of a mill on each dollar, to be levied and collected as provided by law, upon the taxable property of each township and city, for their respective counties, for the purpose of creating a fund for the relief of honorably discharged indigent members of the army, navy, air force, marine corps, coast guard, and women's auxiliaries of all wars or military expeditions in which the United States of America has been, is, or may hereafter be, a participant . . . and the indigent spouses, minor children, and parents of each such indigent or deceased member. . . .  If any money in the fund is not necessary for the purpose for which it was raised, the money shall remain in the treasury of the county as a soldiers' relief fund, and shall be considered in raising future sums therefor.

As can be seen, this section requires that the board of commissioners create a soldiers' relief fund by a tax levy. It also, however, requires the commissioners to consider the amount existing in the fund when determining the amount, if

---

[1]This act was initially enacted in 1899 and amended in 1984 to update antiquated language.

3

any, of the annual levy for the fund.[2]

Having thus established the funding mechanism, the act then continues by providing a procedure in MCL 35.23 for initiating and determining the amount of relief to be granted. This section states:

> The supervisor of each township and ward in each of the counties of this state, and where there is no ward supervisor the aldermen of the several wards of every incorporated city in this state, shall, on or before the last Monday in September in each year, make and place in the hands of the soldiers' relief commission of the county, a list of all the persons entitled to relief under the provisions of this act, and the soldiers' relief commission, on the first Monday in October in each year, shall proceed to determine the amount necessary for aid and relief to be granted such persons under this act, which shall be then and there recorded in the books to be kept by the secretary of said soldiers' relief commission. The commission may determine not only the sum to be paid, but the manner of paying the same, and may discontinue the payment of such relief in their discretion. Appeal may be taken therefrom to the circuit court of such county, by certiorari by filing application therefor with the clerk within fifteen days following the making of such decision. The court shall hear the case de novo and its decision shall be final.

What is established, then, is a scheme whereby it is

---

[2]In response to the dissent, we note that, once the fund is created, the act provides the commissioners with discretion regarding the amount of the annual tax levy in light of any amount existing in the fund. Moreover, at oral argument, plaintiffs' counsel conceded that the record did not establish whether Macomb County had, at some time in the past, created a fund by levying a tax in compliance with the act. Presumably, the record is similarly unclear regarding whether Wayne County, at some time in the past, created a fund by levying a tax in compliance with the act.

anticipated that the township supervisor or ward aldermen will annually prepare a list of persons eligible for relief and provide this list to the soldiers' relief commission.[3]  That commission then, in its discretion, determines the amount of relief, if any, to grant to the indigent, honorably discharged veteran or dependent applicant.  Moreover, the statute provides that aggrieved applicants can appeal the commission's decision to the circuit court.

### Facts and Proceedings

Here, without ever having sought relief under the act, plaintiffs filed suit to compel Macomb and Wayne Counties to levy the annual tax in order to create the fund of which the act speaks.  Further, they, and presumably others, will soon seek damages for those years in which the counties allegedly

---

[3]The statute requires the supervisor or alderman to create such a list, but it does not specify the means for identifying eligible persons.  Clearly, the supervisor or alderman can only place persons on this list if aware or made aware that an eligible person is in need.  The supervisor or alderman can obviously act sua sponte and include on the list any known eligible persons.  However in order to fulfill the duty to "make . . . a list of *all* the persons entitled to relief under the provisions of this act," he is also obligated to add to the list any eligible person who asks to be included on it.  (Emphasis added.)  This reading of the statute, rather than one reposing veto power with the supervisor or alderman regarding who will be included on the list, expands the opportunities for eligible veterans who, for whatever reason, have not been included on the list. We opt for this expansive reading because this is a remedial statute and we are obligated to read it liberally in favor of the indigent veterans it is intended to benefit.  See *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 398; 572 NW2d 210 (1998).

failed to comply with the act.

Macomb County, in the *Lee* case, moved for summary disposition, claiming, inter alia, lack of standing and failure to exhaust administrative remedies. In support, it provided the 1994 affidavit of its Department of Veterans Affairs Director, which indicated that the department had, through county budget appropriations, maintained a fund of $1000 for veterans relief for several years and that no claims for such relief had been filed for the past ten years. The trial court granted Macomb County's motion for summary disposition, concluding that plaintiffs lacked standing and failed to exhaust administrative remedies because they had not requested relief from the local government.

Wayne County, in the *Walker* case, sought summary disposition on similar grounds. It provided documentary evidence indicating that, in 1994, the Wayne County Commission approved an appropriation of $1,146,042 for Veterans' Affairs expenditures and that the Wayne County Soldiers Relief Program had been operational since February 1995. In this case, however, the trial court denied Wayne County's motion for summary disposition, concluding that plaintiffs had standing because they were in the class intended to be benefitted by the act and had been harmed by noncompliance with it and that they were not required to exhaust administrative remedies to challenge a wholesale failure to comply with the act.

6

These two cases were consolidated in the Court of Appeals, which largely reversed in *Lee* and affirmed in *Walker*.[4] The Court of Appeals majority concluded that plaintiffs had standing because they are "members of the class for whose benefit the Act was enacted" and because they are "detrimentally affected in a manner different from the public generally." 235 Mich App 332. The panel held that mandamus was an appropriate remedy here because plaintiffs were seeking compliance with the act, not the levy of a particular amount or the grant of particular benefits. *Id*. at 333-334. Finally, it concluded that plaintiffs' actions could not be dismissed on the basis of failure to exhaust statutory remedies because they were alleging a wholesale failure to implement and comply with the act. *Id*. at 335.

In dissent, former Justice John Fitzgerald, sitting by assignment, disagreed with the majority regarding standing:

> [P]laintiffs have not alleged any specific injury as a result of defendants' failure to establish a mechanism for evaluation of a claim for benefits or of defendants' underfunding of their respective veterans' relief funds. [*Id*. at 337.]

Explaining further he said:

> [P]laintiffs have not alleged a distinct and palpable injury resulting from defendants' failure to fully comply with the statute, and consequently their claims cannot be differentiated from those of

---

[4]The Court of Appeals ruled that government immunity precluded plaintiffs' negligence and gross negligence claims in both cases.

7

> any other citizen.  As a prudential matter, courts must exercise their jurisdiction to address tangible, personal, threatened interests, not generalized grievances.  I am not persuaded that plaintiffs, as private citizens whose individual rights under the statute have not been abridged, have standing . . . .  [*Id.* (citations omitted).]

Regarding mandamus, he stated that it was inappropriate, assuming standing existed, because plaintiffs were "seeking to compel defendants' exercise of discretion in a particular manner" that is beyond the scope of mandamus  *Id*. at 338-339.

This Court granted leave to appeal.  462 Mich 912 (2000).

## Standard of Review

Whether a party has standing is a question of law.  This Court reviews questions of law de novo.  *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 595; 614 NW2d 88 (2000).

## Standing

It is important, initially, to recognize that in Michigan, as in the federal system, standing is of great consequence so that neglect of it would imperil the constitutional architecture whereby governmental powers are divided between the three branches of government.

Standing, as a requirement to enter the courts, is a venerable doctrine in the federal system that derives from US Const, art III, § 1, which confers only "judicial power" on the courts and from US Const, art III, § 2's limitation of the

8

judicial power to "Cases" and "Controversies."[5]  In several recent cases, the United States Supreme Court has discussed the close relationship between standing and separation of powers.  In *Lewis v Casey*, 518 US 343, 349; 116 S Ct 2174; 135 L Ed 2d 606 (1996), Justice Scalia, writing for the majority, said:

> [T]he doctrine of standing [is] a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches.  It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. [Citations omitted.]

*Lewis* was foreshadowed in *Lujan v Defenders of Wildlife*, 504 US 555, 559-560; 112 S Ct 2130; 119 L Ed 2d 351 (1992),

---

[5]The first clause of US Const, art III, § 2 states:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

where Justice Scalia, again speaking for the Court, explained:

> [T]he Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts. . . . One of those landmarks, setting apart the "Cases" and "Controversies" that are of the justiciable sort referred to in Article III—"serv[ing] to identify those disputes which are appropriately resolved through the judicial process,"—is the doctrine of standing.  Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.  [Citations omitted.]

In *Plaut v Spendthrift Farm, Inc*, 514 US 211, 219-225; 115 S Ct 1447; 131 L Ed 2d 328 (1995), Justice Scalia, in another majority opinion, provided a detailed analysis of the concern with preserving the separation of powers between the legislative and judicial branches, that traced its history back to the framers of the U.S. Constitution.

Finally, Chief Justice Rehnquist even more dramatically stated the case in his majority opinion in *Raines v Byrd*, 521 US 811, 818, 820; 117 S Ct 2312; 138 L Ed 2d 849 (1997):

> "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."

> \* \* \*

> "[T]he law of Art III standing is built on a single basic idea—the idea of separation of powers."

In Michigan, standing has developed on a track parallel

10

to the federal doctrine, albeit by way of an additional constitutional underpinning. In addition to Const 1963, art 6, § 1, which vests the state "judicial power" in the courts, Const 1963, art 3, § 2 expressly directs that the powers of the legislature, the executive, and the judiciary be separate.[6] Concern with maintaining the separation of powers, as in the federal courts, has caused this Court over the years to be vigilant in preventing the judiciary from usurping the powers of the political branches. Early on, the great constitutional scholar Justice Thomas M. Cooley discussed the concept of separation of powers in the context of declining to issue a mandamus against the Governor in *Sutherland v Governor*, 29 Mich 320, 324 (1874):

> Our government is one whose powers have been carefully apportioned between three distinct departments, which emanate alike from the people, have their powers alike limited and defined by the constitution, are of equal dignity, and within their respective spheres of action equally independent. One makes the laws, another applies the laws in contested cases, while the third must see that the laws are executed. This division is accepted as a necessity in all free governments, and the very apportionment of power to one department is understood to be a prohibition of its

---

[6]

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising the powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

11

exercise by either of the others. The executive is forbidden to exercise judicial power by the same implication which forbids the courts to take upon themselves his duties.

This position followed from the even earlier iteration of the standing doctrine by Justice Campbell in 1859 when, speaking for this Court, he said:

> By the judicial power of courts is generally understood the power to hear and determine *controversies* between adverse parties, and questions in litigation. [*Daniels v People*, 6 Mich 381, 388 (1859)(emphasis added).]

Later, in *Risser v Hoyt*, 53 Mich 185, 193; 18 NW 611 (1884), this Court explained:

> The judicial power referred to is the authority to hear and decide *controversies*, and to make binding orders and judgments respecting them. [Emphasis added.]

More recently, *Johnson v Kramer Bros Freight Lines, Inc*, 357 Mich 254, 258; 98 NW2d 586 (1959), reaffirmed this concept by quoting this portion of *Risser*.

In fleshing out the tests that a litigant must meet to establish standing, the most recent majority iteration from this Court[7] is found in *House Speaker v Governor*, 441 Mich 547, 554; 495 NW2d 539 (1993):

> Standing is a legal term used to denote the existence of a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy. However, evidence that a party will

---

[7]This Court addressed standing in *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629; 537 NW2d 436 (1995), but a majority did not agree on a standing test.

12

engage in full and vigorous advocacy, by itself, is insufficient to establish standing. Standing requires a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large.

*House Speaker* provided a general description of standing and articulated the requirement of an interest distinct from that of the public. However, further explication of the essential elements of standing has proven difficult as demonstrated by this Court's experience in attempting to fashion a clear majority in *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629; 537 NW2d 436 (1995). In that case, the separate opinions suggested different inquiries as being central to determining standing. Some focused on whether the plaintiff could establish an injury distinct from that of the public, others on whether the plaintiffs were in the zone of interest the statutory or constitutional provision at issue is designed to regulate. Perhaps the clearest template was set forward by Justice Cavanagh who, along with Justice Boyle, advocated adopting the United States Supreme Court's *Lujan* test. *Lujan* held:

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . .

13

> th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
>
> The party invoking . . . jurisdiction bears the burden of establishing these elements.  [504 US 560-561 (citations omitted).]

In our view, the *Lujan* test has the virtues of articulating clear criteria and of establishing the burden of demonstrating these elements.  Moreover, its three elements appear to us to be fundamental to standing; the United States Supreme Court described them as establishing the "irreducible constitutional minimum" of standing.  We agree.  Accordingly, we now join Justice Cavanagh's view and adopt the *Lujan* test, which should be seen as supplementing the holding in *House Speaker,* as well as this Court's earlier standing jurisprudence, e.g., *Daniels* and *Risser*, *supra*.

Applying this test in the present case, it is clear that plaintiffs lack standing.  In *Lujan* terms, they have not yet suffered any "injury in fact."  See 504 US 560.  Specifically, they have shown no "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"  *Id.* at 560. Both groups of plaintiffs have alleged and argued only that they "should receive" and "should have received, the benefit of the property tax levy required by MCL 35.21," and that the failure to levy and collect the tax set forth in the soldiers'

14

relief fund act "has caused, and continues to cause, plaintiffs great harm and damage." Even if accepted as true, these allegations cannot satisfy the *Lujan* injury in fact requirement because it is not readily apparent how the collection of a tax pursuant to the act would have benefitted plaintiffs in a concrete and particularized manner. MCL 35.23 provides that the soldiers' relief commission is to determine the amount and manner of any relief thereunder and that it may discontinue such relief in its discretion. Thus, the amount of relief, if any, that plaintiffs might have received under this act is solely within the discretion of the commission.[8] "[G]reat harm and damage" is not concrete or particularized. Plaintiffs also fail to explain, with particularity, what is meant by "the benefit of the property tax levy required by MCL

_____

[8]The dissent argues that it is "inescapable" that relief under that act would have benefitted the indigent plaintiffs in a concrete and particularized manner. Slip op, p 8. We surmise that the idea is that any claimant would be better off with more money. Yet this verity misses the point. The issue is whether plaintiffs can demonstrate a concrete and particularized injury arising out of the alleged failure of the counties to levy a tax in accordance with the act. Moreover, even if we jump ahead, as the dissent would, to the point where fund distribution to plaintiffs was at issue, it is not "inescapable" that plaintiffs would receive funds because the commission would likely exercise its discretion to avoid duplicating other government and private social welfare programs. Thus, the commission could, even if plaintiffs were indigent, decide not to award funds to them.

Thus, for all these reasons, what might be received, if anything, far from being concrete and particularized, is simply uncertain.

15

35.21." At most, we can only speculate how the existence of a fund would have helped plaintiffs. Accordingly, plaintiffs lack standing to pursue the present actions.

In the absence of standing, we will not address plaintiffs' substantive claims.

## Conclusion

Plaintiffs do not have standing to bring the present actions. We accordingly reverse the Court of Appeals determination that they have standing and remand these actions to the respective circuit courts for entry of orders dismissing plaintiffs' actions on the basis of lack of standing.

CORRIGAN, C.J., and YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.

# STATE OF MICHIGAN

## SUPREME COURT

MICHAEL LEE, BRYAN DUNCIL, MARY
DUNCIL on behalf of herself and
JOSEPH DUNCIL, BRYAN DUNCIL, KENNETH
DUNCIL, and JON DUNCIL, as their
Next Friend, and the class of all
others similarly situated,

    Plaintiff-Appellees,

v                                         No. 114700

THE MACOMB COUNTY BOARD OF
COMMISSIONERS, and the COUNTY OF
MACOMB,

    Defendant-Appellants.

_____

DENNIS D. WALKER, on behalf of
himself and DAWNELL J. WALKER and
MELANIE WALKER, their Next Friend,
and DWAYNE STEAGALL, ERNEST GROCE,
JERRY GRAY, PAUL ECKLEY, DUANE GORE,
KENNETH JONES, MORRIS BARTOLOTTA, and
the class of all others similarly
situated,

    Plaintiffs-Appellees,

v                                         No. 115259

THE WAYNE COUNTY BOARD OF
COMMISSIONERS and THE COUNTY
OF WAYNE,

    Defendants-Appellants.

_____

WEAVER, J. (*concurring*).

I concur in the majority's decision to reverse the judgment of the Court of Appeals. I write separately because I disagree with the majority's decision to adopt the *Lujan*[1] standing requirements. I would find that the plaintiffs have standing. However, I agree with the decision to reverse; because the relief requested is a discretionary act, I would find that mandamus is not an appropriate remedy in this case.

Although I would hold that no relief can be granted in this case, I am still cognizant of the great debt that our society owes to its veterans. The soldiers' relief act was first enacted in 1899, "to provide relief outside of the soldiers' home for honorably discharged indigent soldiers, sailors and marines, and the indigent wives, widows and minor children of such indigent or deceased soldiers, sailors and marines . . . ." 1899 PA 214. I think it is appropriate to consider the last paragraph of the report on the Spanish-American War included in the Michigan Legislative Manual and Official Directory for the years 1899-1900, p 693:

> The forces that went into the war with Spain, from Michigan, were actuated by the highest motives. They came from every employment and walk of life, yet none entered that service without a sacrifice. All left peaceful homes with comfortable surroundings and sure sources of income to risk their lives in battle or in camp in

---

[1] *Lujan v Defenders of Wildlife*, 504 US 555; 112 S Ct 2130; 119 L Ed 2d 351 (1992).

2

response to the call of duty and patriotism.  Some were killed in battle, others died of diseases incident to life in camp under new and untried conditions.  Some came home comparatively unharmed, while others, and very many others, came bringing with them the seeds of disease and infirmities from which they will always suffer.  There is but one proposition to make.  The people of Michigan in common with the people of this great nation owe a debt of gratitude and love  to those who in any way represented them in the glorious contest for humanity so happily and successfully ended by our treaty of peace with Spain, and we should not forget now or hereafter any of the obligations imposed on us by this debt.

I

Unlike constitutional cases in federal courts, the Michigan standing requirements have been based on prudential, rather than constitutional, concerns. See, generally, *House Speaker v State Administrative Bd*, 441 Mich 547, 559, n 20; 495 NW2d 539 (1993), and Justice RILEY's dissent in *Detroit Fire Fighters Ass'n v Detroit* 449 Mich 629; 537 NW2d 436 (1995).  Both this Court and the United States Supreme Court have recognized that we are not required to comply with the federal rules regarding standing.[2]  I believe that adopting

_____

[2] In *House Speaker* we stated that "this Court is not bound to follow federal cases regarding standing," pointing out that "[o]ne notable distinction between federal and state standing analysis is the power of this Court to issue advisory opinions.  Const 1963, art 3, §8.  Under Article III of the federal constitution, federal courts may issue opinions only where there is an actual case or controversy."  *Id.,* p 559, including n 20.  Justice Kennedy, writing for the Court in *ASARCO Inc v Kadish*, 490 US 605, 617; 109 S Ct 2037; 104 L Ed
(continued...)

3

the federal standing test as set forth in *Lujan v Defenders of Wildlife*, 504 US 555; 112 S Ct 2130; 119 L Ed 2d 351 (1992), is unnecessary; therefore I decline to supplement the current standing doctrine of this Court.

Applying Michigan's traditional rules of standing, I would find that the plaintiffs have standing to bring the present action. In Michigan, it is well settled that all disgruntled citizens do not automatically have standing to sue a public body. In *House Speaker, supra* at 554, we said:

> Standing is a legal term used to denote the existence of a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy. However, evidence that a party will engage in  full and vigorous advocacy, by itself, is insufficient to establish standing. Standing requires a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large.

The usual rule has been that a private citizen has no standing to vindicate a public wrong or enforce a public right where that citizen has not been hurt in any manner different than the citizenry at large. *Waterford Sch Dist v State Bd of Ed*, 98 Mich App 658, 662; 296 NW2d 328 (1980).

---

[2](...continued)
2d 696 (1989), acknowledged:

> We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability . . . .

4

However, while a private suit is generally precluded when a violation of a public duty is claimed, a private action can be maintained if the public duty also was intended to benefit private individuals. *Taylor v Lake Shore & M S R Co*, 45 Mich 74, 77; 7 NW 728 (1881). Justice COOLEY, speaking for the Court, explained that "[t]he nature of the duty and the benefits to be accomplished through its performance must generally determine whether it is a duty to the public in part or exclusively, or whether individuals may claim that it is a duty imposed wholly or in part for their especial benefit." *Id*. See also *Gardner v Wood*, 429 Mich 290; 414 NW2d 706 (1987).

The plain language of the soldiers' relief fund act[3] unequivocally supports the notion that the statute was enacted solely to benefit citizens in the same class as the plaintiffs, i.e., honorably discharged, indigent veterans. Clearly, the plaintiffs possess an interest in the soldiers' relief fund that is "different from the public at large." Moreover, the relief sought does indeed more directly and

---

[3]

The county board of commissioners of each county shall annually levy, a tax not exceeding 1/10 of a mill on each dollar . . . for the purpose of creating a fund for the relief of honorably discharged indigent members of the army, navy, air force, marine corps, coast guard, and women's auxiliaries of all wars or military expeditions . . . . See MCL 35.21.

5

tangibly benefit the plaintiffs than it does the public at large. In this case, the plaintiffs made a proper showing that they were injured in a manner distinct from the citizenry at large. Therefore, I would find that the plaintiffs have standing to pursue the instant action.

II

Plaintiffs ask that the defendant counties be ordered to begin assessing taxes to maintain their soldiers' relief funds. However, this particular duty, which is covered by MCL 35.21, is discretionary, and therefore is not a proper subject for mandamus. Because I would find that mandamus is not an appropriate remedy in this case, I agree with the majority's result.

It is well settled that an order of mandamus will be issued only if the plaintiffs have a clear legal right to the performance of the specific duty sought to be compelled and the defendant has a clear legal duty to perform the same. *State Bd of Ed v Houghton Schs,* 430 Mich 658, 666; 425 NW2d 80 (1988). The act sought to be compelled must not be discretionary. It must be of a ministerial nature, and it must be prescribed by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment. If any reasonable doubts exist regarding the question of

6

discretion or want of discretion, the courts will hesitate to interfere. See *In re MCI Telecommunications,* 460 Mich 396; 596 NW2d 164 (1999)*, Oakland Schs Bd of Ed* v *Sup't of Pub Instruction,* 401 Mich 37; 257 NW2d 73 (1977) *and Taylor v Ottawa Circuit Judge,* 343 Mich 440; 72 NW2d 146 (1955).

Here, the county board of commissioners is given the authority and the discretion to determine the amount of the tax to be levied; the only limit it is given is that it not exceed 1/10 of a mill. The first sentence of MCL 35.21 provides:

> The county board of commissioner of each county shall annually levy, a tax not exceeding 1/10 of a mill on each dollar, to be levied and collected as provided by law, upon the taxable property of each township and city, for their respective counties, for the purpose of creating a fund for the relief of honorably discharged indigent . . . .

Further, the last sentence of MCL 35.21 states

> If any money in the fund is not necessary for the purpose for which it was raised, the money shall remain in the treasury of the county as a soldiers' relief fund, and shall be considered in raising future sums therefor.

Additionally, the soldiers' relief commission is required to make an annual report of the money on hand, the money it is expending, and how much it believes will be needed for the next year. Therefore the relief requested by the plaintiffs,

7

that the defendant counties be ordered to begin  assessing taxes under the statute, is a discretionary act, and mandamus is not an appropriate remedy.

There is no specific relief the Court could provide, as we cannot require the county to assess a specific amount. Accordingly, I concur with the majority opinion's result reversing the judgment of the Court of Appeals.

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

MICHAEL LEE, BRYAN DUNCIL, MARY
DUNCIL on behalf of herself and
JOSEPH DUNCIL, BRYAN DUNCIL,
KENNETH DUNCIL, and JON DUNCIL,
as their Next Friend, and the class
of all others similarly situated,

    Plaintiffs-Appellees,

v                                            No. 114700

THE MACOMB COUNTY BOARD OF
COMMISSIONERS, and the COUNTY OF
MACOMB,

    Defendants-Appellants.

_____

DENNIS D. WALKER, on behalf of
himself and DAWNELL J. WALKER and
MELANIE WALKER, their Next Friend,
and DWAYNE STEAGALL, ERNEST GROCE,
JERRY GRAY, PAUL ECKLEY, DUANE GORE,
KENNETH JONES, MORRIS BARTOLOTTA,
and the class of all others similarly
situated.

    Plaintiffs-Appellees,

v                                            No. 115259

THE WAYNE COUNTY BOARD OF
COMMISSIONERS and the COUNTY OF
WAYNE,

    Defendants-Appellants.

_____

KELLY, J. (*dissenting*).

I disagree with the majority's reversal of the Court of Appeals decision. I believe plaintiffs have standing to bring the current actions and mandamus has been appropriately sought. I would affirm the Court of Appeals decision that reversed summary disposition in favor of Macomb County and affirmed denial of Wayne County's motion for summary disposition.

## I. THE STATUTES

Plaintiffs alleged in their complaints that defendants violated the soldiers' relief fund act[1] by failing to comply with their duty to levy and collect a tax and perform other obligations. Section 1 of the act creates a relief fund by mandating an annual tax levy and payment of the moneys collected to the county treasurer. MCL 35.21.

The method for disbursing moneys from the fund appears at § 3 of the act. This section mandates the compilation of a list of persons entitled to relief under the act and a

_____

[1]MCL 35.21 *et seq.*

2

determination of the amount of relief to be granted to such persons. MCL 35.23.[2]

In summary, a relief fund was to be established and an annual compilation of the names of persons entitled to monies from the fund was to be made. Many of the actions of the county board of commissioners, the township supervisors and the soldiers' relief commission that are described in the statute are mandatory, as evidenced by use of the word "shall."

Under the act, the county board of commissioners has a duty to levy a tax annually. The supervisor of each township and ward is obligated to make a list of persons eligible for relief and give that list to the soldiers' relief commission. The soldiers' relief commission must determine the amount of money to be distributed to the persons on the list. The county board of commissioners is obligated to pay the money from the taxes to the county treasurer, who disburses the money at the order of the soldiers' relief commission.

The majority focuses on the discretion that the act gives the soldiers' relief commission to set the amount to be distributed. However, plaintiffs do not allege that the

---

[2]Pursuant to MCL 35.622, the soldiers' relief commission was declared inoperative and its duties and powers transferred to the county department of veterans' affairs. This opinion will continue to refer to the soldiers' relief commission for the sake of consistency.

soldiers' relief commission failed to comply with the act, nor do they request money from it. Rather, plaintiffs seek to compel the creation of a relief fund through the levy and collection of an annual tax. The majority's reliance on the discretion of the soldiers' relief commission ignores the fact that the act gives no discretion whatsoever regarding whether taxes are levied and a fund created. It mandates these acts and directs the board of commissioners to accomplish them.

In the cases before us, plaintiffs claim that the county boards of commissioners failed to comply with the act and perform their nondiscretionary duties. Plaintiffs alleged in their complaints that the county boards of commissioners had not at any time levied a tax for the soldiers' relief fund.[3] This failure to comply with the nondiscretionary obligations

_____

[3]It appears that the allegation regarding the Macomb County Board of Commissioners may have been overstated. Plaintiffs' counsel conceded during oral argument that the record does not establish whether a fund was created in Macomb County at sometime in the past and later eliminated. Nevertheless, it must be remembered that these cases challenge rulings made on motions for summary disposition brought under MCR 2.116(C)(8). In ruling on these motions, only the pleadings are considered. *Maiden v Rozwood,* 461 Mich 109, 119-120; 597 NW2d 817 (1999). Therefore, the concession is not relevant to the resolution of this appeal.

Moreover, plaintiffs' complaints alleged ongoing violations of the act. Whether a fund went into and out of existence during the last century has no bearing on the allegation that the Macomb County Board of Commissioners failed to comply with the act at the time plaintiffs filed their complaint.

4

of the act is the basis of plaintiffs' claims. Hence, the majority's focus on the discretionary nature of the soldiers' relief commission's duties camouflages the relevant fact: no discretion exists that permits the county boards of commissioners not to levy taxes for a soldiers' relief fund.[4]

## II. STANDING

The trial court decisions in these matters were made on motions for summary disposition and are reviewed de novo. *Maiden v Rozwood,* 461 Mich 109, 118; 597 NW2d 817 (1999). In both cases, defendants challenged plaintiffs' standing under MCR 2.116(C)(8). Such motions test the legal sufficiency of the complaint, and, when ruling on them, the court may consider only the pleadings. A trial judge may grant summary disposition where the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id.* at 119.

The majority has concluded that summary disposition was properly granted to Macomb County and improperly denied to Wayne County. It adopts the test for standing articulated in *Lujan v Defenders of Wildlife,* 504 US 555; 112 S Ct 2130; 119

---

[4]As noted by the majority and the concurrence, the act gives the county boards of commissioners discretion in determining the *amount* of the annual tax levy. However, this fact does not in any way undermine plaintiffs' claims. As evidenced by the word "shall," there is no discretion regarding whether to levy an annual tax.

5

L Ed 2d 351 (1992). It then finds that plaintiffs failed to establish standing under the test.

While I agree with the majority's adoption of the *Lujan* test, I cannot agree that plaintiffs lack standing. That conclusion ignores the nature of plaintiffs' claims. Plaintiffs did not appeal from the denial of benefits under the act. Instead, they sought to compel defendants to comply with the act. That the amount of relief "is solely within the discretion of the commission" is irrelevant to a determination of the injury plaintiffs sustained from defendants' failure to establish a relief fund in compliance with the act.

To withstand summary disposition on the basis of standing, plaintiffs must plead that they suffered an injury in fact through defendants' failure to comply with the mandates of the soldiers' relief fund act. They have done so. They have alleged that they are members of the class of persons for whose benefit the fund was intended. They have alleged that defendants failed to (1) levy a tax to establish the relief fund, and (2) pay the collected moneys to the county treasurer, both of which were for the benefit and relief of plaintiffs. Plaintiffs have asserted that, because defendants failed to comply with the act and establish the fund, plaintiffs could not apply for or receive benefits to which the act entitled them.

6

Because plaintiffs have alleged failure to establish a relief fund and denial of the opportunity to apply for or receive its benefits, they have sufficiently asserted an injury in fact. There is no need for them to allege precisely how the fund would have helped them. Had it been established, plaintiffs have alleged that they would have applied for financial assistance.

It is inescapable that the creation of a fund and the opportunity for indigents to receive its financial assistance would have benefitted plaintiffs in a concrete and particularized manner. By definition, to be indigent is to be "needy and poor, or one who has not sufficient property to furnish him a living nor anyone able to support him to whom he is entitled to look for support." Black's Law Dictionary (6th ed). Through their assertions, plaintiffs have sufficiently alleged "specific, concrete facts demonstrating that the challenged practices harmed [them], and that [they] personally would benefit in a tangible way from the court's intervention." *Warth v Seldin*, 422 US 490, 508; 95 S Ct 2197; 45 L Ed 2d 343 (1975).

The majority determines that plaintiffs' claims are "uncertain" because plaintiffs do not allege a likelihood that the soldiers' relief commission would have granted funds to them. Under this test, no plaintiffs could ever have standing

7

to contest defendants' failure to establish a relief fund. No plaintiff could know how a soldiers' relief commission would have exercised its discretion. If plaintiffs' had sought relief within the discretion of the soldiers' relief commission, what could they be required to allege to defeat a motion for summary disposition under MCR 2.116(C)(8)? I submit that it is only that, under a reasonable exercise of discretion, the soldiers' relief commission would have granted them relief. Plaintiffs in these cases made that showing by alleging their eligibility, as veterans and as indigents.

However, that the amount of relief distributed was solely within the discretion of the soldiers' relief commissions is in no way related to whether plaintiffs suffered an injury in fact. Since plaintiffs alleged injury from defendants' failure to establish funds in accordance with the act, the issue of discretion in administering the funds is irrelevant.

Plaintiffs also adequately pleaded facts that established the second element of the *Lujan* test. The causal connection between their alleged injuries and defendants' alleged conduct or failure to act is illustrated in the reasoning above. If defendants had complied with the requirements of the act, plaintiffs have asserted that they would have applied for benefits. There is no indication that the failure to comply

8

with the provisions of the act was the result of the independent action of a third party.

Finally, plaintiffs have pleaded facts sufficient to fulfill the third element of the *Lujan* test. They seek to compel defendants' full compliance with the soldiers' relief fund act. On the basis of the pleadings, plaintiffs have alleged sufficient facts to establish that their injuries would be redressed if these cases were returned for further proceedings.

For these reasons, I would conclude that plaintiffs have standing under the test in *Lujan*.

### III. MANDAMUS

Mandamus is an extraordinary remedy that cannot be invoked to compel discretionary actions. *Teasel v Dep't of Mental Health*, 419 Mich 390, 409-410; 355 NW2d 75 (1984). However, an order of mandamus can be issued where "a body or an officer [is] charged with a duty to take action in the matter, notwithstanding the fact that the execution of that duty may involve some measure of discretion." *Id.* at 410.

Therefore, mandamus can compel a body or officer to exercise discretion, but cannot compel the manner in which the discretion is exercised. *Id.* To issue an order of mandamus,

9

a defendant must have a clear legal duty and a plaintiff must have a clear legal right to have the duty performed. *Toan v McGinn*, 271 Mich 28, 33; 260 NW 108 (1935).

The relevant parts of the soldiers' relief fund act are phrased in terms of clear legal duties that are applicable to defendants. Under the act, the county board of commissioners is charged with the duty of levying taxes on an annual basis. It is the exercise of duty that plaintiffs seek to compel, a proper purpose for the issuance of an order of mandamus.

The act also imposes a legal duty on defendants to create a fund for the relief of honorably discharged indigent veterans and their indigent spouses, minor children, and parents. It establishes a clear legal right to relief for certain persons, including the class that plaintiffs seek to represent. Whether persons eligible under the act receive relief is dependent on compliance by defendants in establishing a relief fund. Defendants have clear legal duties and plaintiffs have a clear legal right to have defendants perform their duties. Mandamus is appropriately sought.

IV. CONCLUSION

The soldiers' relief fund act, however arcane, is valid and binding law. The Legislature could have chosen to repeal it at any time during the last century, but did not do so.

Moreover, it is apparent from the fact that the Legislature amended the act in 1984 that it made a conscious decision not to repeal it.

The majority's reliance on that portion of the act giving the soldiers' relief commission discretion in granting relief ignores the nature of plaintiffs' claims. Plaintiffs did not contend that the soldiers' relief commission failed to comply with the act. Nor did plaintiffs seek relief within the discretion of that commission. Therefore, the fact that the amount of relief "is solely within the discretion" of the soldiers' relief commission, as the majority points out, is irrelevant to the claims presented here. What plaintiffs seek is to compel the county boards of commissioners to comply with their mandatory obligation to annually levy taxes and to create relief funds.

As noted by the majority, the soldiers' relief fund act is remedial and should be read liberally in favor of plaintiffs, its intended beneficiaries. See *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 398; 572 NW2d 210 (1998). Plaintiffs alleged that they suffered an injury in fact through defendants' failure to establish relief funds and denial of the opportunity to apply for or receive benefits under the act. These claims are not so unenforceable as a matter of law that no factual basis could possibly justify

11

recovery.

Plaintiffs have satisfied the criteria under the *Lujan* test, establishing standing. The soldiers' relief fund act charges defendants with the duty to take action in plaintiffs' interest. Hence, the Court of Appeals correctly determined that plaintiffs had standing to bring suit and that mandamus was a proper remedy. Accordingly, I would affirm the decision of the Court of Appeals.

CAVANAGH, J., concurred with KELLY, J.